Michael A. AQUINO, Plaintiff–Appellant,

v.

Michael P.W. STONE, Secretary of the Army, Defendant–Appellee.

No. 91–1164.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1991.

Decided Feb. 26, 1992.

Gary Rowland Myers, Gary R. Myers & Associates, Washington, D.C., argued (John A. Wickham, on brief), for plaintiff-appellant.

Major Patrick W.P. Lisowski, Army Litigation Div., U.S. Army, Arlington, Va., argued (Dennis Edward Szybala, Asst. U.S. Atty., Alexandria, Va., on brief), for defendant-appellee.

Before SPROUSE and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

NIEMEYER, Circuit Judge:

Lieutenant Colonel Michael Aquino, formerly of the U.S. Army Reserves, filed suit under the Privacy Act of 1974, 5 U.S.C. § 552a (1988), against the Secretary of the Army seeking to amend an Army report of a criminal investigation about him and to recover damages caused by inaccuracies in the report. He also sued under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (1988), to review the Secretary's refusal to amend the report. The district court entered summary judgment for the Secretary, concluding that criminal investigatory files are exempt from the provisions of the Privacy Act that were invoked by Aquino and that the Secretary's decision not to amend was not arbitrary or capricious. 768 F.Supp. 529. Finding no reversible error, we affirm.

### I

In November 1986, the San Francisco Police Department (SFPD), the Federal Bureau of Investigation (FBI) and the U.S. Army Criminal Investigation Division Command (CID) began investigating charges that Gary Hambright had sexually molested several of the children entrusted to his care as an employee at the Child Development Center on the Army base known as the Presidio. On August 12, 1987, Army Captain Larry Adams–Thompson reported to the authorities that his three-year-old daughter, who had attended the Child Development Center during the period of Hambright's alleged crimes, had become visibly frightened upon seeing LTC Aquino and his wife at the Army's post-exchange that day and called them "Mikey" and "Shamby." In a subsequent interview by an FBI agent, the girl implicated "Mikey," "Shamby" and "Mr. Gary" in the sexual molestation of her and other children at "Mr. Gary's house." The investigation of Hambright was expanded to include Aquino and his wife.

Although the SFPD discontinued its investigation of the Aquinos in September 1988 for lack of sufficient evidence, the CID continued and in August 1989 issued a report of investigation designating both Aquinos in the "title block" of the report and describing the various child-abuse and related criminal offenses investigated. The report concluded that the investigation was closed because all further leads involved adults who refused to cooperate, and the applicable threeyear statute of limitations had expired in June 1989.

Thereafter, on January 31, 1990, the Aquinos requested that the CID remove their names from the title block of the report. While the CID deleted Mrs. Aquino's name entirely, on the ground that the identifications of her by the children interviewed were inadequate, it did not delete LTC Aquino's name. The CID also removed from the report charges arising out of allegations that Aquino made against CPT Adams–Thompson. All the child-abuse charges remained, because "[t]he evidence of alibi offered by LTC Aquino [was] not persuasive."

Aquino filed suit in the district court under the Privacy Act, 5 U.S.C. § 552a(g), to compel the Army to amend the investigatory report about him and for damages resulting from his discharge from the service, which he attributes to the inaccurate records about him.[1] He also sued under the Administrative Procedure Act to review the action of the Secretary of the Army in developing the investigatory report about him and in refusing to amend it.

On cross motions for summary judgment the district court granted the Army's motion and denied Aquino's, holding that the files sought to be amended by Aquino were exempt from the Privacy Act provisions under which Aquino sued. On its review of the Army's action under the Administrative Procedure Act, the court concluded that "[t]here was sufficient evidence from which the Army decision maker could determine that probable cause existed to believe that [Aquino] committed the offenses" and that therefore the Army's decisions to create the report and not amend it were not arbitrary or capricious.

This appeal followed, but Aquino has now abandoned his claim for damages.

## II

The Privacy Act of 1974 was enacted to "protect the privacy of individuals identified in information systems maintained by Federal agencies" by giving the individuals information about and access to records about them and permitting them "to have a copy made of all or any portion thereof, and to correct or amend such records." Pub.L. No. 93–579, § 2(a)(5), (b)(3), 88 Stat. 1896, 1896 (1974). The Act authorizes civil actions in federal court to compel compliance with the Act and, in the case of "intentional or willful" violations, to award damages. *See* 5 U.S.C. § 552a(g)(1), (4).

Aquino contends that evidence collected by the Army CID did not justify its creating an investigation report titled under his name and that those involved with the investigation were motivated to remove him from the Army because he is the founder of the Temple of ·Set, a satanist religion. Because, he argues, the Army did not have probable cause to link him with the crimes described in the report, the report should be amended and his name deleted from its caption because the information is not "accurate, relevant, timely, or complete," as required by 5 U.S.C. § 552a(d)(2).

The Secretary contends that Aquino cannot proceed under the Privacy Act because the records that Aquino seeks to amend are criminal investigation records which are exempt from the Act under 5 U.S.C. § 552a(j)(2).

The Privacy Act authorizes agencies to exempt from many of its provisions, including those applicable here, criminal investigative record systems maintained by the agency or a "component" thereof. The record systems must be "maintained by an agency or component thereof which performs as its principal function any activity

---

1. In 1990 a continuation board of the Army Reserve recommended discontinuing Aquino's service in the Reserve, and he was processed out of the Army.

pertaining to the enforcement of criminal laws" and must consist of "information compiled for the purpose of a criminal investigation." *See* 5 U.S.C. § 552a(j)(2). To implement its election to exempt criminal investigative record systems, the agency must promulgate rules to do so and give reasons why the systems are to be exempted. *See* 5 U.S.C. § 552a(j).

The Army has promulgated a rule, 32 C.F.R. § 505.5(e)(r), to exempt the CID's system of records known as the Criminal Investigation and Crime Laboratory Files which includes reports of investigations. The rule applies to "[a]ll portions of this system of records which fall within 5 U.S.C. § 552a(j)(2)." The rule also sets forth the reasons for the exemption:

> [A]ccess might compromise on-going investigations, reveal classified information, investigatory techniques or the identity of confidential informants, or invade the privacy of persons who provide information in connection with a particular investigation.

*See* 32 C.F.R. § 505.5(e)(r)(4)(b).

Aquino argues that the exemption may be given effect only if the Army promulgates rules which would require it to give, on a case by case approach, reasons for exempting each document or set of documents which it chooses to include within the exemption. In short he argues that documents must be processed individually in a manner specified by rule such that each time an exemption is invoked, an authorized reason for the exemption must be given. In support of his argument he cites *Doe v. FBI*, 936 F.2d 1346, 1353 (D.C.Cir. 1991). In that case the court was presented with the problem, not present here, of providing a method by which the FBI could protect exempt records which were contained in non-exempt files. The FBI had an employment application file with respect to Doe, which contained criminal investigation records of Doe. The court stated, "The critical question, then, is whether the FBI's investigatory information on Doe lost its exempt status when it was subsequently used, in altered form, for a non-law enforcement purpose," i.e., to process an em-

ployment application. 936 F.2d at 1356. The court remanded the case to the district court to determine whether the cumulative burden to the FBI from processing amendment requests, one of the FBI's reasons for exemption, applied to non-law enforcement records containing law enforcement information as a class. *Id.* at 1358. We are not presented with any of those issues in this case.

While we can understand that Aquino would want a more individualized evaluation of his file to justify the CID's claim of exemption, particularly when he believes that an investigatory report is inaccurate, we do not think that the Privacy Act was intended to provide an amendatory procedure for records about investigations into violations of the criminal laws. The Army effectively promulgated rules to exempt criminal investigatory files, and Aquino makes no contention that his records are not contained within the "system of records" exempted. Section 552a(j) provides that any agency may promulgate rules "to exempt *any system of records* within the agency" from specified Privacy Act provisions if the agency

> include[s] in the statement required under § 553c of this title [requiring notice to interested persons giving them an opportunity to participate in the rule making], the reasons why the system of records is to be exempted from a provision of this section.

(emphasis added). This the agency has done. Aquino does not suggest that the rule-making process was defective. Nor does he contend that the reasons stated by the rule are not adequate. Aquino's principal complaint centers on his contention that the investigation itself was improperly motivated and that information reported was in some respects false, but he does not controvert the authenticity of the records or the fact that a criminal investigation was conducted. In these circumstances, we cannot conclude that a statute aimed at protecting the privacy of records can be made the vehicle to challenge whether an underlying criminal investigation was properly motivated. It is sufficient for the Privacy Act exemption that the records are

authentic and were generated in connection with the CID's investigation into a possible violation of the criminal law based on information sufficient to support at least "a colorable claim" that the subject committed the violation. *Cf. Pratt v. Webster,* 673 F.2d 408, 421 (D.C.Cir.1982) (interpreting 5 U.S.C. § 552(b)(7) (1976) to require that an agency "establish that its investigating activities are realistically based on a legitimate concern that federal laws have been or may be violated").

Because we conclude that the files in this case were generated for the purpose of a law enforcement investigation by a component of the Army, the CID, whose primary purpose it was to investigate violations and that such files were exempted by regulation promulgated under § 552a(j) of the Privacy Act, the refusal by the CID to amend those files cannot give rise to a civil action under § 552a(g)(1)(A).

### III

Aquino also sued under the Administrative Procedure Act to review the Secretary's decisions to title an investigatory report with his name and refuse to amend it. We are in some doubt about whether an action to compel the amendment of documents under the Administrative Procedure Act is available when Congress provides specifically for that type of suit under the Privacy Act. *Cf. Block v. Community Nutrition Inst.,* 467 U.S. 340, 345–48, 104 S.Ct. 2450, 2453–55, 81 L.Ed.2d 270 (1984) (rejecting Administrative Procedure Act (APA) review of milk marketing orders in suits by consumers because extensive non-APA statutory scheme of review implicitly precludes them). We need not decide this issue, however, because we agree with the district court that the decisions meet the applicable standard under the Administrative Procedure Act.

■ Although the decisions to investigate and subsequently to title a report of the investigation in Aquino's name fall within the prosecutorial discretion of the CID, the decision not to amend the title block constitutes informal adjudication. We therefore agree with the parties and

the district court that the appropriate standard of review under the Administrative Procedure Act is whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A) (1988); *Duke Power Co. v. United States Nuclear Regulatory Comm'n,* 770 F.2d 386, 389 (4th Cir.1985) (per curiam). Under this standard, " '[T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *See Hutto Stockyard, Inc. v. United States Dep't of Agric.,* 903 F.2d 299, 307 (4th Cir.1990) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)).

■ Under the applicable Army regulations, the CID names an individual as a suspect in the title block of a report of investigation of a crime if there is "probable cause to title," which exists when "considering the quality and quantity of all available evidence, without regard to its admissibility in a court of law, the evidence points toward the commission of a crime by a particular person ... and would cause a reasonably prudent person to believe that the person ... committed the crime." CID Reg. 195–1, Criminal Investigation: CID Operations, Glossary–4 (November 1, 1986) (as amended April 1, 1989). Generally, to amend a report an individual must adduce "new, relevant, and material facts that are determined to warrant revision." Army Reg. 195–2, Criminal Investigation Activities, ¶ 4–4b (Oct. 30, 1985). More particularly, to remove the individual's name from the title block the individual carries the "burden of proof" that "probable cause [as defined by regulation] does not exist to believe that the individual committed the offense for which titled as a subject." *Id.*

In its initial decision to include Aquino in the title block of the report of investigation, the CID relied principally upon the testimony of CPT Adams–Thompson's daughter that "Mikey" had sexually molested her, on her identifications of Aquino as "Mikey" and of the Aquinos' apartment

building as the location of the alleged crime, and on other evidence from Aquino's apartment partially matching the child's descriptions of the locale of the crime. The Army denied Aquino's request to amend the report on the basis that Aquino's "evidence of alibi," the testimony of the men working in the Aquino's apartment at the time of the alleged offenses, was not persuasive. The Army's considerations in both decisions clearly were relevant and their factual bases not so wholly unreliable as to render either decision arbitrary or capricious.

Aquino contends that both decisions to title a report in his name and not to amend were tainted by consideration of the irrelevant factor of his satanist religious beliefs. He points to a letter dated October 26, 1988, from an aide to U.S. Senator Jesse Helms to the Secretary of the Army expressing distress that satanists, and Aquino in particular, were members of the Army Reserves. In a follow-up letter, dated January 9, 1989, Senator Helms himself argued strongly for removing Aquino from the Army. Aquino also notes that on November 29, 1988, certain high-level officers within the Army met to discuss his case in response to letters from the Senator's aide and others. And finally, the record contains an unattributed document suggesting that the continuation board deciding whether Aquino could continue serving in the Army Reserves learned that his records had been "flagged." [2]

This evidence supports the finding, which we must accept on review of summary judgment, that some pressure was put on the top of the Army to remove Aquino. It does not, however, require the inference that this pressure was communicated down the ranks to the CID, which conducted the investigation and created the report of investigation, or was otherwise a factor in the investigation. Indeed the record contains strong evidence to the contrary. The report presented at the high-level meeting on November 29, to which Aquino alluded, recommended, "Do not issue 'top down' guidance to [Aquino's command or the continuation board].... Allow CID to continue its inquiry; allow the local command to determine whether charges should be preferred and an Article 32 investigation conducted." More significantly, the Region Judge Advocate at the Presidio developed the plan for continuing the investigation of the Aquinos prior to October 17, 1988, when the letter from Senator Helms' aide was written. Moreover, the CID reached its decision "to initiate this [report of investigation]" on November 21, 1988, before the meeting at which the high-level officers of the Army decided how to respond to the pressure from Senator Helms' aide. The evidence of political pressure advanced by Aquino does not support his conclusion that it precipitated the investigation about him.

We cannot conclude from the record before us that the Army's decision to title an investigative report with Aquino's name or its subsequent decision not to remove his name from the title block of the report were the result of other than relevant considerations. Since it is not the role of the courts to second-guess an agency's decision, absent a clear error of judgment, not present in this case, we conclude that the district court acted properly.

The decision of the district court granting the Secretary's motion for summary judgment and denying Aquino's is accordingly

AFFIRMED.

---

**2.** On appeal Aquino seeks to "supplement the record" with further evidence that, he argues, demonstrates anti-satanist bias on the part of an Army officer involved in the investigation of his case. Because we review appeals from summary judgment only upon the record available to the district court, *see* Fed.R.App.P. 10(a), we deny his request to supplement the record and refuse to consider the offered additional materials.