**John C. HOLZ, Plaintiff,**

v.

**Joseph W. WESTPHAL, Defendant.**

**No. Civ.A. 00–2237(LFO).**

United States District Court, District of Columbia.

Aug. 12, 2002.

---

John Adams Wickham, Evergreen, CO, for John C. Holz.

Laurie J. Weinstein, Thomas M. Ray, U.S. Attorney's Office, Washington, DC, for Joseph W. Westphal.

*MEMORANDUM*

OBERDORFER, District Judge.

Plaintiff John C. Holz ("Holz") sued Joseph W. Westphal, Acting Secretary of the United States Army ("the Secretary"), seeking to amend a record generated during an Army criminal investigation of him. The parties filed cross-motions for summary judgment. For the following reasons, an accompanying order grants summary judgment to Holz.

## I. Background

The underlying facts of this case are not seriously disputed. On February 22, 1997, Holz, then an eighteen-year-old U.S. military dependent living with his family in Germany, was involved in a car accident. Holz drove one of the cars. The other driver was a German citizen who died at the scene. The accident occurred on German soil, away from any military installation. German and U.S. military police reported to the scene. German authorities arrested Holz and later charged him with negligent homicide.

Upon being contacted by the German police, local U.S. Army Criminal Investigation Divisions ("CID") officials in Germany began an investigation of the incident. On February 23, 1997, the day after the accident, the CID prepared an initial Report of Investigation ("ROI"). The ROI set forth the facts of the accident and indicated that the CID's investigation of them continued. Holz was "titled" in the ROI, meaning that his name was designated in its "subject block." The subject block also contained the notations "Fatal Traffic Accident" and "Negligent Homicide."

On April 22, 1997, the CID prepared a final ROI. The final ROI stated that the investigation of Holz's car accident "is being terminated … in that the offenses were committed by a civilian, who is not subject to the UCMJ [Uniform Code of Military Justice], there are no violations of federal criminal statutes with which the person can be charged, and no other U.S. Army interest exists." The final ROI further noted that Holz "has been charged by the local German prosecuting attorney, and is pending adjudication." Holz was titled in the final ROI. The notations "Fatal Traffic Accident" and "Negligent Homicide" were also retained in the subject block of the final ROI.

The inclusion of Holz's name in the ROI's subject block is the source of the dispute in this case. Department of Defense regulations state that an individual is titled in a ROI if there has been "a determination that credible information exists that a person or entity may have committed a criminal offense or is otherwise made the object of a criminal investigation." Department of Defense Instruction ("DODI") 5505.7 ¶ 4.3.[1] When an individual is titled in a ROI, his or her name is indexed in the Defense Clearance and Investigations Index ("DCII"), "a computerized central index of investigations for all [Department of Defense] investigative activities." *Id.* ¶ 4.2. "The primary purpose for titling and indexing an individual or entity as the subject of a criminal investigation is to ensure that information in a report of investigation can be retrieved at some future time for law enforcement and security purposes." *Id.* ¶ 4.1. Neither the initial ROI prepared in February 1997 nor

---

1. Army regulations set forth a different standard for titling, stating that "[a] person will not be reported as the subject of an offense without probable cause supported by corroborating evidence." Army Regulation ("AR") 190–45 ¶ 4.2.B.

the final ROI prepared in April 1997 contain an express determination that either "credible information" or "probable cause" existed to warrant Holz's name being designated in the ROI's subject block.

Holz's prosecution in Germany for negligent homicide was ultimately transferred to a juvenile court. On September 22, 1997, the German court dismissed the case against Holz conditioned upon his making a financial contribution to the Red Cross. This dismissal did not result in a conviction, and the records, because they pertain to a juvenile, are sealed.

In April 1998, Holz requested that the Army remove his name from the ROI's subject block. Phillip McGuire, Director of the U.S. Army's Criminal Records Center, officially denied this request in a letter dated November 9, 1998. The denial letter, which constituted a final agency action, noted that under Department of Defense regulations, an individual's name will be deleted from the subject block of a ROI "in the case of mistaken identity; i.e., the wrong person's name is entered ... as opposed to the fact that the person is found not to have committed the offense under investigation or that the offense did not occur." DODI 5505.07 ¶ 6.4.2.[2] The letter continued that because Holz had not shown that the inclusion of his name in the subject block could be attributed to mistaken identity, he was not entitled to the amendment he sought.

Meanwhile, in July 1998, the FBI entered information from the ROI into its criminal history database, resulting in a FBI report listing Holz as the subject of the offense of negligent homicide and excessive speed. By written request of the

Army, Holz's name was removed from the FBI database in October 1998.

Holz filed this lawsuit on September 18, 2000, seeking the removal of his name from the ROI's subject block under the Privacy Act, 5 U.S.C. § 552a *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Holz alleges that by titling him, the Army created a permanent criminal history suggesting he committed negligent homicide, despite the fact that the only legal proceedings to result from his car accident resulted in no finding of guilt. This, Holz continues, disqualified him from receiving a ROTC scholarship and from pursuing a career in criminal justice.

## II. Discussion

Both Holz and the Secretary now seek summary judgment on Holz's claims. Summary judgment is appropriate where the pleadings, depositions, and affidavits on file show that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The facts set forth above are not seriously disputed. Instead, the primary dispute in this case is whether the ROI is exempt from the Privacy Act's requirements, thereby depriving Holz of a civil cause of action.

### A.

The Privacy Act "was enacted to 'protect the privacy of individuals identified in information systems maintained by Federal agencies' by giving the individuals information about and access to records about them and permitting them 'to have a copy made of all or any portion thereof, and to correct or amend such records.'" *Aquino v. Stone,* 957 F.2d 139, 141 (4th Cir.1992)

---

**2.** In contrast, Army regulations provide that a request to delete a name from the subject block "will be granted if it is determined that probable cause does not exist to believe that

the individual committed the offense for which titled as a subject." AR 195–2 ¶ 4–4(b).

(quoting Pub.L. No. 93–579, § 2(a)(5), (b)(3), 88 Stat. 1896, 1896 (1974)). Among the Act's requirements are that any agency that "maintains a system of records" must "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Toward this end, the Act provides that an agency must "permit [an] individual to request amendment of a record pertaining to him" and

 (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

 (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official.

*Id.* § 552a(d)(2)(B). When an agency decides "not to amend an individual's record in accordance with his request," that individual may bring a civil cause of action in federal court. *Id.* § 552a(g)(1)(A).

An agency may, however, exempt certain records from these requirements.

The Act enumerates several "general exemptions," which permit agencies to promulgate regulations removing entire categories of records from the Act's requirements. One such category is any "system of records" consisting of "information compiled for the purpose of a criminal investigation." *Id.* § 552a(j)(2)(B). Consistent with this authorization, the U.S. Army promulgated a regulation exempting from the Act the CID's system of records, known as the "Criminal Investigation and Crime Laboratory Files," which include ROIs like the one relating to Holz. 32 C.F.R. § 505.5(e)(15).[3] The exemption removes such documents from the Act's amendment and access provisions. *Id.* § 505.5(e)(15)(B).[4] U.S. Army regulations specifically governing ROIs restate that ROIs are exempt from the Privacy Act's amendment provisions and that "[r]equests for amendment will be considered only under the provisions of this regulation." Army Regulation ("AR") 195–2 ¶ 4–4(b). The Secretary in this case claims that the ROI is exempt from the Privacy Act and that he is therefore entitled to summary judgment.

██ An agency's right to invoke the exemption involving criminal investigation records, however, is not absolute. Rather, in order to qualify for this exemption, a record must satisfy two criteria. *See Doe v. FBI*, 936 F.2d 1346, 1353 (D.C.Cir.1991). "First, 'the agency's investigatory activi-

---

**3.** The parties cite this regulation as 32 C.F.R. § 505.5(e)(r), but during all relevant times in this case the regulation existed, with negligible content changes, as 32 C.F.R. § 505.5(e)(15).

**4.** The regulation provides in full that such records are exempt because access might compromise on-going investigations, reveal classified information, investigatory techniques or the identity of confidential informants, or invade the privacy of persons who

provide information in connection with a particular investigation. The exemption from access necessarily includes exemption from amendment, certain agency requirements relating to access and amendment of records, and civil liability predicated upon agency compliance with those specific provisions of the Privacy Act. The exemption from access necessarily includes exemption from other requirements.

32 C.F.R. § 505.5(e)(15)(iv)(B).

ties that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security.'" *Id.* (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C.Cir.1982)). To make this showing, the agency "must demonstrate a connection between its investigation and the existence of a 'possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*, 673 F.2d at 420). "Second, 'the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality.'" *Id.* (quoting *Pratt*, 673 F.2d at 421). In applying this second requirement, "a reviewing court 'should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision.'" *Id.* at 1353–54 (quoting *Pratt*, 673 F.2d at 421).[5]

■ The ROI in this case does not satisfy this test. The Army cannot demonstrate a connection between the CID's investigation of Holz's car accident and the existence of a "possible security risk or violation of federal law" because, as is expressly acknowledged in the ROI itself, the CID lacked authority to investigate the incident. Army regulations governing CID operations provide that "[t]he Army has investigative authority *whenever an Army interest exists* and investigative authority has not been specifically reserved to another agency." AR 195-2 ¶ 3–1(b) (emphasis added). According to that regulation, an Army interest is implicated if, for example, a crime is committed on a military installation, a suspect is subject to the Uniform Code of Military Justice, or the suspect is a Department of Defense employee. *Id.*

Presumably, an initial determination was made that the Army might have an interest in investigating Holz's accident. Holz does not dispute that the Army was entitled to conduct a preliminary investigation sufficient to determine whether an Army interest existed. As stated in the final ROI, however, the Army ultimately answered this question in the negative, concluding that the investigation had to be terminated because "the offenses were committed by a civilian, who is not subject to the UCMJ, there are no violations of federal criminal statutes with which the person can be charged, and *no other U.S. Army interest exists*" (emphasis added). This subsequent determination, like the preliminary one, is entitled to deference.

The CID's final determination that no Army interest was implicated by Holz's car accident was, in effect, a concession that the investigation that gave rise to the ROI was not "related to the enforcement of federal laws or to the maintenance of national security" and that no "plausible basis" existed to pursue the matter. *Doe*, 936 F.2d at 1353–54. The fact that an interest was presumed for a short period of time before being conclusively found lacking does not save the ROI. Indeed, even if documents arising from the preliminary investigation would have been considered exempt prior to the determination that there was no basis on which to pursue it, the exemption cannot continue to apply when the circumstances supporting it changed. Accordingly, the ROI is not exempt and Holz may seek its amendment under the Privacy Act.

---

5. The D.C. Circuit originally conceived these criteria in *Pratt* for evaluating the law enforcement exemption under the Freedom of Information Act. The D.C. Circuit extended this test to the Privacy Act in *Doe*, noting that "[t]he *Pratt* test adapts well to the Privacy Act context." *Doe*, 936 F.2d at 1353.

A different result is not compelled by *Aquino v. Stone*, 957 F.2d 139 (4th Cir. 1992), a somewhat analogous case in which the Fourth Circuit held that a ROI was exempt from amendment under the Privacy Act. In *Aquino*, the plaintiff requested that the Army remove his name from the title block of a ROI describing allegations of child abuse against him. *See id.* at 140. The CID, which had closed the investigation due to the unavailability of additional leads and the expiration of the statute of limitations, refused. *See id.* at 141. The Fourth Circuit held that the ROI was exempt under a regulation that preceded, and was essentially identical to, 32 C.F.R. § 505.5(e)(15). The court noted that while the plaintiff claimed that the CID's investigation of him was improperly motivated and that the ROI contained some false information, he did not dispute the authenticity of the record or the fact that an investigation occurred. *See id.* at 142. The court continued:

> In these circumstances, we cannot conclude that a statute aimed at protecting the privacy of records can be made the vehicle to challenge whether an underlying criminal investigation was properly motivated. It is sufficient for the Privacy Act exemption that the records are authentic and were generated in connection with the CID's investigation into a possible violation of the criminal law based on information sufficient to support at least "a colorable claim" that the subject committed the violation.

*Id.* at 142–43. The Fourth Circuit concluded that this standard was met and that the ROI was exempt from the Privacy Act.

Unlike this Court, the Fourth Circuit was not bound by *Pratt* and *Doe* when it articulated its own standard governing the application of the Privacy Act's exemption for criminal investigation records.[6] At any rate, it is not clear that the Secretary could prevail under *Aquino*, because Holz's claim is materially different than that presented in *Aquino*. The plaintiff in *Aquino* argued that the investigation of him was improperly motivated, but he did not contest the CID's power to conduct the investigation. In contrast, Holz asserts that the CID had no right to conduct any investigation other than a preliminary one to respond to the German authorities' request for assistance and to determine whether it had an interest in pursuing the matter. When an agency generates records about an individual while investigating a matter it later concedes was never within its purview, the individual should be permitted a cause of action under the Privacy Act.

**B.**

Having concluded that the ROI here is not exempt from the Privacy Act's amendment provisions, it is necessary to determine whether it contains information that "is not accurate, relevant, timely, or complete." 5 U.S.C. § 552a(d)(2)(B). The court determines this matter *de novo*. *Id.* § 552a(g)(2)(A).

■■■ I conclude that the ROI is not sufficiently accurate or complete so as to ensure its fairness to Holz. "[T]he Privacy Act establishes as the recordkeeper's polestar, 'fairness' to the individual about whom information is gathered." *Doe v. United States*, 821 F.2d 694, 699 (D.C.Cir. 1987). The final ROI's subject block contains Holz's full name, his birth date, his address, and the notations "Fatal Traffic

---

**6.** The Fourth Circuit did cite *Pratt*, however, in support of its statement that the exemption applied if there was information sufficient to support at least "a colorable claim" that the subject committed the violation. *See Aquino*, 957 F.2d at 143 (citing *Pratt*, 673 F.2d at 421).

Accident" and "Negligent Homicide," without any further explanation. A reasonable trier of fact would conclude that this information, in this format, suggests that Holz committed negligent homicide. Holz, however, was never found guilty of this offense. Rather, the only legal proceedings to arise from Holz's car accident—in the only legal system to possess jurisdiction over the matter—resulted in a dismissal of the charges, with no finding of guilt. Therefore, the suggestion in the ROI is not sufficiently accurate or complete to be fair to Holz.

This unfairness is underscored by the fact that the information contained in the ROI's subject block is automatically replicated in the database cataloguing the CID's investigatory activities and is thereby subject to dissemination. The risk of disclosure is not merely abstract, as demonstrated when the FBI obtained the information from the ROI and prepared a criminal history report of Holz based on it. Under such circumstances, Holz is entitled to have his name removed from the ROI's subject block.

 The Secretary argues that this result constitutes an inappropriate intrusion into the CID's activities. As an initial matter, it is perfectly permissible for this Court to review the Army's action. As the D.C. Circuit recently observed in another Privacy Act case, "Although judicial reluctance to impinge on military matters is understandable in many contexts, it is unjustified in this setting; as we have discussed, the Congress clearly *enlisted* the federal courts to inquire into potential military violations of the Privacy Act." *Cummings v. Department of the Navy*, 279

F.3d 1051, 1056–57 (D.C.Cir.2002) (footnote omitted) (citation omitted).

At any rate, and contrary to the Army's assertion, requiring the removal of Holz's name from the ROI's subject block neither undermines the Army's authority to conduct a criminal investigation nor questions its decision initially to exercise that authority in this instance. Nor does this conclusion apply to a case where the Army initiates a criminal investigation that it later decides to terminate for some reason other than a lack of authority—such as the unavailability of further leads or a procedural bar to prosecution, which led to the termination of the investigation at issue in *Aquino*. But when the Army begins such an investigation, only to determine during the course of those efforts that it lacks authority to continue it due to the absence of its own self-imposed predicate for that authority, a document generated in the interim may not be exempted from the requirements of the Privacy Act. Additionally, even if these circumstances are present, the record does not automatically qualify for amendment. Rather, the individual seeking its amendment must still show that the record "is not accurate, relevant, timely, or complete" in a way that renders it unfair. 5 U.S.C. § 552a(d)(2)(B). The ROI pertaining to Holz satisfies these requirements, and Holz is therefore entitled to the amendment he seeks.[7]

### III. Conclusion

For these reasons, I conclude that the ROI pertaining to Holz is not exempt from the Privacy Act. I further conclude that the designation of Holz in the ROI's subject block is inaccurate and incomplete,

---

7. In light of this conclusion, it is not necessary to address Holz's alternative APA claim. Furthermore, although the Secretary originally moved to dismiss or to transfer on the basis of venue, counsel for the Secretary conceded at oral argument that venue was proper in this District for Holz's Privacy Act claim. Therefore, the motion to dismiss or to transfer venue is denied without further discussion.

and thus unfair, under the Privacy Act. Accordingly, an accompanying order awards summary judgment to Holz and denies the same to the Army.