**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BERT W. REIN; HUNTON &
WILLIAMS,

*Plaintiffs-Appellants,*

v.

UNITED STATES PATENT &
TRADEMARK OFFICE; UNITED STATES
DEPARTMENT OF COMMERCE,

*Defendants-Appellees.*

No. 07-1738

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:06-cv-00615-CMH)

Argued: October 28, 2008

Decided: January 28, 2009

Before WILKINSON and AGEE, Circuit Judges,
and John T. COPENHAVER, JR., United States District
Judge for the Southern District of West Virginia,
sitting by designation.

Affirmed in part, reversed in part, and remanded by published
opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Copenhaver joined.

**COUNSEL**

**ARGUED:** John Jay Range, HUNTON & WILLIAMS, Washington, D.C., for Appellants. Gerard John Mene, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** Edward P. Noonan, HUNTON & WILLIAMS, Richmond, Virginia, for Appellants. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellees.

---

**OPINION**

AGEE, Circuit Judge:

Bert W. Rein and Hunton & Williams (collectively "R&HW") appeal the district court's award of summary judgment to the United States Patent & Trademark Office ("USPTO") and Department of Commerce ("DOC") (collectively "the Agencies") in their civil action alleging the Agencies did not conduct an adequate search for documents they requested under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), and that the Agencies improperly withheld documents as exempt which were discovered during the search. At this juncture, we do not find that the Agencies improperly withheld any documents. However, as discussed below, some of the *Vaughn* index entries were insufficient to permit the district court, or this Court, to properly assess the Agencies' claimed exemptions from FOIA disclosure. Thus, for the reasons set forth below, we affirm the judgment of the district court, in part, and reverse the judgment, in part, and remand for further proceedings.

I.

R&HW represent parties involved in on-going patent litigation between NTP, Inc. ("NTP") and Research In Motion Ltd.

("RIM") related to BlackBerry wireless telephone and e-mail devices.[1] In pursuit of documentation relevant to that litigation, Rein and Hunton & Williams separately submitted FOIA requests for documents from the Agencies. Rein asked the USPTO for "any documents in [delineated] non-mutually exclusive categories pertaining to" certain patents, which were identified by number and referred to collectively as "the Campana Patents," as well as the re-examinations of those patents. (J.A. 20-25.) Hunton & Williams filed a FOIA request with the DOC seeking similar documents pertaining to the Campana Patents, the NTP patents and re-examinations of those patents. (J.A. 60-64.)

In response to Rein's request, the USPTO provided four interim responses yielding approximately 789 pages. The DOC conducted a search based on Hunton & Williams's request and also forwarded the request to the USPTO, which was the DOC unit determined to possess the most responsive material.[2] It initially provided Hunton & Williams the approximately 789 pages of documents that had previously been released to Rein. In response to both FOIA requests, the USPTO also identified approximately 1,621 additional documents that were released with redactions or not disclosed on the ground that they were exempt from disclosure.[3]

R&HW then filed complaints in the district court alleging the USPTO failed to fulfill its obligation to conduct adequate searches for responsive documents and wrongfully withheld or redacted responsive documents.[4] After the complaints were filed, the Agencies provided R&HW with an additional 1,445

---

[1]RIM manufactures BlackBerry devices.

[2]The USPTO is a federal agency under the jurisdiction and control of the DOC. 15 U.S.C. § 1511 (2000).

[3]These documents comprise 6,625 pages of withheld material. (J.A. 178.)

[4]Although Rein and Hunton & Williams filed separate complaints, the parties subsequently agreed to the consolidation of the actions.

pages of responsive material, some of which contained redactions.[5] The parties proceeded with discovery and submitted affidavits supporting their positions. In addition, the Agencies submitted a *Vaughn* index[6] identifying the documents withheld, in whole or in part, based on the claim that the documents were exempt from the FOIA's disclosure requirements. The *Vaughn* index lists each document by number, and contains columns for reporting the document type (e.g., e-mail; report), date, employees (authors and recipients), document description/subject, number of pages, whether the document was withheld in whole or in part, the exemption claimed, and any other descriptive remarks. The Agencies filed a motion for summary judgment, and R&HW filed a motion for partial summary judgment.[7]

In an order entered June 26, 2007, the district court granted the Agencies' motion for summary judgment and denied R&HW's motion. The district court held that the searches described by the Agencies' declarations were reasonable and there was no reason to doubt the credibility of the declarations. The court observed that the USPTO's effort to correct minor defects in the initial search "demonstrates that [it] acted in good faith." It further observed that while R&HW "may

---

[5]In total, the Agencies provided R&HW with 2,234 pages in response to their requests.

[6]A *Vaughn* index is a list describing the documents an agency withholds. The list must include sufficiently detailed information to enable a district court to rule whether the document falls within a FOIA exemption. The *Vaughn* index received its name from the decision in which the use of such an index was first discussed, *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[7]The Agencies moved to strike the declarations of Scott A. Hodes and William White, which were submitted with R&HW's motion for summary judgment. This motion was pending before the district court at the same time it considered the cross-motions for summary judgment, but the district court did not rule on it. Accordingly, Hodes's declaration was before the district court when it considered the cross-motions for summary judgment, and it is part of the record for us to consider on appeal.

believe that additional documents exist and that they are entitled to these documents, this belief alone is not sufficient to withstand a motion for summary judgment" where the Agencies demonstrated that they conducted a reasonable search. The district court concluded the DOC "did not abrogate or abandon its requirement to search for documents" by reviewing its own files and also forwarding Hunton & Williams's request to the USPTO for further response. (J.A. 1164-71.)

The district court rejected the allegation that the Agencies' *Vaughn* index was facially inadequate to determine whether documents the Agencies claimed were exempt from release were properly withheld. In so doing, the court described the *Vaughn* index provided by the Agencies and found "that the information provided regarding the description of each document, and the stated basis upon which no further portion of the document can be provided, is more than sufficient . . . to find whether the . . . exemptions properly apply to the listed materials." (J.A. 1172.)

The district court then concluded that the Agencies properly withheld or redacted the documents on the *Vaughn* index because the documents "consist[ed] of draft documents pertaining to the reexamination of the NTP litigation, and analysis and opinions on legal and policy matters surrounding the NTP administrative litigation faced by the various patent examiners." It determined the documents were both "predecisional" and "deliberative," thus meeting the requirements for exemption pursuant to 5 U.S.C. § 552(b)(5) (2007). The court also found that the Agencies had not waived their right to claim both attorney work product and attorney-client privilege exemptions.[8] (J.A. 1171-77.) The district court thus concluded

---

[8]The district court also held that some of the documents were appropriately redacted pursuant to § 552(b)(6) in order to protect the personal information of USPTO employees and third parties. R&HW do not challenge this part of the district court's decision, and it is not before us on appeal. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

the Agencies were entitled to summary judgment. (J.A. 1177-79.)

R&HW noted a timely appeal and we have jurisdiction under 28 U.S.C. § 1291 (2000).

## II.

We review the district court's grant of summary judgment in a FOIA action *de novo*. *Ethyl Corp. v. U.S. Envtl. Prot. Agency*, 25 F.3d 1241, 1246 (4th Cir. 1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc) (internal quotation marks omitted). We construe the evidence in the light most favorable to R&HW, the parties opposing the Agencies' summary judgment motion, and draw all reasonable inferences in their favor. *See id.*

The standard of review in FOIA cases is limited to determining "whether (1) the district court had an adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached is clearly erroneous." *Spannaus v. Dep't of Justice*, 813 F.2d 1285, 1288 (4th Cir. 1987) (internal quotation marks omitted). Legal errors are reviewed *de novo*. *Simmons v. Dep't of Justice*, 796 F.2d 709, 710 (4th Cir. 1986).

## III.

R&HW challenge the district court's determinations that the Agencies conducted an adequate search in response to their FOIA requests and that the Agencies were entitled to withhold certain documents based on the deliberative process exemption. We address each issue in turn.

A.    Adequacy of the Searches

R&HW first argue the Agencies' searches for the requested documents were insufficient. They assert the Agencies improperly relied on the results of a search conducted in response to existing FOIA requests from other entities ("the Media requests") instead of performing new searches tailored to the specific material R&HW sought. They also point to references in documents the Agencies did provide to contend that numerous "other responsive documents" exist but have not been provided or claimed as exempt. In addition, they contend the produced documents and the Agencies' declarations show that the Agencies failed to search certain offices likely to have responsive documents.

The FOIA requires governmental agencies to provide, upon request, information to the public if the request "reasonably describes" the record sought and is made in accordance with published agency guidelines for making such requests. § 552(a)(3)(A). "In responding . . . to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format. . . ." § 552(a)(3)(C). The requirement to "search" "means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." § 552(a)(3)(D).

The Rein request, submitted prior to the Hunton & Williams request, sought "document[s], including emails or telephone logs, constituting, reflecting or relating to any internal or external written or oral communications between" certain categories of individuals relating to the USPTO's reexaminations of the Campana Patents, and which were dated (or sent, issued, or received) on or after January 1, 2002. It also requested any documents regarding all other FOIA requests related to the Campana patents; the policies and procedures used by the USPTO during the reexaminations of the Campana patents; communications between USPTO and NTP's attorney, a *New York Times* reporter, and securities analysts;

and documents to identify the chain of authority within USPTO during the reexaminations of the Campana patents. (J.A. 20-25.)

The USPTO submitted responses to interrogatories, as well as declarations by Robert Fawcett, the USPTO's FOIA Officer, which detail the nature and scope of the searches it performed in response to R&HW's requests. Upon receiving Rein's FOIA request, Fawcett determined that it appeared to ask for "the same broadly-defined records" sought in the Media requests.[9] Accordingly, he decided to process the Rein and Media requests together, and considered materials responsive to the Media requests as also being responsive to the Rein request.

The USPTO search pursuant to the Media request was sent to the six offices Fawcett determined were "likely to have any responsive documents": the Office of the Director, the Office of External Affairs, the Solicitors' Office, the Office of Patents Operations, the Office of Public Affairs, and the Office of General Counsel. Fawcett decided not to send the search request to other departments because they had no "reasonable connection to the NTP patents" and patent reexaminations.[10] (J.A. 171.). The search methods contained in the request "were crafted to maximize the inclusion of as many responsive documents as possible" by requesting employees to

---

[9]The Media Requests are not part of the record, however, Fawcett states that they sought USPTO "documents concerning the NTP Patent Reexaminations." In addition, Fawcett's detailed memorandum sent to USPTO employees directing them to search for responsive materials is in the record. Together, they support the conclusion that the requests sought similar material.

[10]Fawcett "concluded that other USPTO units, such as Trademarks, the Office of Chief Information Officer, the Office of Human Resources, etc. could not have reasonably possessed any records responsive to the NTP Re-exam requests. None of these organizations have any reasonable connection to the NTP patents and patent Re-exams, or the language of the FOIA Requests for the NTP patents and patent Re-Exams." (J.A. 171.)

conduct thorough paper and electronic searches using: (1) the FOIA request(s) provided to them; (2) an electronic keyword search list that [Fawcett] provided that included cues found in the basic FOIA requests such as law firm names, company names, relevant patent numbers, federal agency names, as well as several additional related words or phrases [Fawcett] conceived for the search request that were not specifically mentioned in any of the FOIA requests, but might have produced responsive records, (e.g., isolated terms such as "NTP," and alternate spellings such as ["]Re-Exam," for "Re-examination" etc.)[11]; and (3) instructions to employ any other conceivable search formulation not listed in the search request that might turn up responsive documents.

In addition, employees were instructed to provide "any and all other documentation" relating to the NTP reexamination that was not specifically described in the FOIA requests, but which was "responsive to the topic of interest expressed therein." The list of search terms provided was "by no means all-inclusive," and individuals were instructed not to "limit searches to only the above-listed keywords." Examples of variations in search terms and potentially responsive communications were provided, and individuals were instructed to

---

[11]The keyword list contained the following terms: Campana, Ney, Heils, Egan, Blackberry, RIM, Research in Motion, Research, Motion, Sturm & Fix, Wiley Rein & Fielding, Hunton & Fix, McKenna Long & Aldridge, House Chief Administrative Office, Greenburg, Novak Druce Deluca & Quigg, Antonelli Terry Stout, Preston Gates, DLA Piper Rudnick Gray Cary US, Traurig, Abramoff, Volz, Scanlon, Committee on House Administration, Committee, Jones Day, Howrey Simon Arnold & White, Kraus Mattingly, Stranger Malur & Brundidge, McDermott Will & Emery, House, Administration, NTP, Office Action, Office, Action, Non-final, Reexamination, Re-examination, Department of Justice, Department of Homeland Security, White House, and Balsillie. It also listed the relevant patent numbers. (J.A. 266.)

"perform electronic searches using all spelling variants" and accounting for misspellings. (J.A. 266-67, 841-43.) Searches were also performed on "remnants of e-mail accounts of several former [USPTO] employees . . . who might have had any connection" to the items sought in the Media requests. (J.A. 170-72, 824, 897.)

Fawcett "personally supervised some of the searches in the Office of the Director and with the Records Officer as a spot-checking measure to ensure that search instructions were being followed and the methods employed were adequate." He also consulted with other FOIA coordinators to monitor the status of searches and identify "possible additional locations of responsive records." (J.A. 172.)

Subsequent to providing Rein three interim disclosures of responsive documents, Fawcett re-examined the Rein request and "determined that the request appeared to specify a few additional items that may not have been definitively included in" the search conducted pursuant to the Media requests. He decided to send a broadened search request to three of the offices that had received the original search (the Offices of External Affairs, Patent Operations, and General Counsel), as well as to the Office of the Under Secretary (who had not received the original request). Although this supplemental search request is not part of the record, Fawcett stated that it "specifically addressed" items in the Rein request that were not part of the Media requests, including Rein's request for communications with RIM's legal representatives and other specific third-parties, policies and procedures used during the reexamination, and status requests regarding the reexamination process.

The Hunton & Williams FOIA request also sought information regarding the reexaminations of the Campana patents, and requested documents containing or referencing communications between DOC employees and certain individuals or entities. It also requested all documents regarding the sched-

ule and timing of proceedings and "final office actions" related to the Campana patent reexaminations. The Hunton & Williams request specifically sought an "unredacted version of the email dated January 1, 2005 from Mr. Theodore Kassinger to Mr. Jon Dudas concerning a meeting with RIM." (J.A. 62.) Lastly, it requested all "CDs, DVDs, tapes and other electronic media storage devices, or hard copy printouts or transcripts from any of the above, that are in the possession of DOC" that were provided to it by anyone affiliated with RIM. (J.A. 63-64.)

Brenda Dolan, the DOC's FOIA director, received Hunton & Williams's request, but decided to transfer primary responsibility for handling the request to the USPTO because the "USPTO is the only agency within the [DOC] that maintains patent and trademark information." (J.A. 280.) Dolan determined the "only part" of the DOC apart from the USPTO that would have responsive documents was "within the Immediate Office of the Secretary," because of the office's "substantive contact with the USPTO." (J.A. 280-81.) Roberta Parsons, the FOIA officer for the Immediate Office of the Secretary submitted a declaration stating that upon receiving Hunton & Williams's request, she sent it to the offices "most likely to have responsive documents," the Executive Secretariat, the Office of the General Counsel, the Office of Finance and Litigation, and the Office of Legislative and Intergovernmental Affairs.[12] (J.A. 738-39.) She instructed them to "conduct a thorough search for "final documents[,] drafts, notes, photographs, e-mails, audio, and videos" concerning RIM, NTP, Blackberry, the Campana patents, the reexaminations of the Campana patents, and the subsequent litigation between RIM and NTP. Current employees conducted the requested

---

[12]Other units within the Office of Immediate Secretary were not asked to search because they "reported that they knew they would not have any responsive documents because they either had not dealt with any matters involving the subject matter . . . or did not maintain records on those topics . . . ." (J.A. 738.)

searches, and the records of former employees were also searched. All responsive documents discovered during the search were sent to the USPTO for exemption and disclosure determinations.

Fawcett handled the Hunton & Williams request at the USPTO, and determined that it "reached to all documents that were previously requested" in the Media requests and the Rein request. (J.A. 175-77.) He then directed three offices—the Solicitor's Office, the Commissioner for Patents, and the Office of the Director—to search for documents that were identified in the Hunton & Williams request and which did not duplicate materials sought in the Media or Rein requests. In addition, individuals in these offices were asked to conduct new and updated searches to determine if "there are new items that were not a part of your previous searches for Campana documents." (J.A. 242.) A copy of the Hunton & Williams request was attached to Fawcett's directive.

Fawcett stated that when he received documents pursuant to any of the FOIA requests, he reviewed them to determine whether they were actually responsive to the requests, removed duplicate documents, and sought to determine whether any of the documents should be redacted or withheld based on any FOIA exemptions. He also followed up with some units when he discovered incomplete searches had been performed, or that e-mails were missing attachments.

In a supplemental declaration, Fawcett stated that several months after the complaints were filed, it came to his attention that Krista Zele, a USPTO special program examiner, had not received the Media, Rein, or Hunton & Williams search requests even though her name was on the list of recipients for the Media requests. Fawcett provided her with copies of all three search requests, and she performed the relevant searches. Fawcett stated that "[t]o the best of [his] knowledge, the omission in not providing Ms. Zele with the requests was

an oversight."**13** (J.A. 274-75.) Fawcett further explained that although Jin Ng, the director of Technology Center 2600, where Zele worked, "was not deemed to possess responsive documents and was, therefore, not named in the search request," (J.A. 275), Ng should have forwarded the request to Zele, which inadvertently had not happened. Zele, in turn, informed Fawcett that Dwayne Bost, another special program examiner in her unit, may also have responsive documents. Bost conducted a search as well. Fawcett reviewed the documents Zele and Bost provided to him, determined that many were duplicates or non-responsive, and some were exempt. The remaining documents identified by Zele and Bost were then provided to R&HW.

On this record, we conclude the district court did not err in finding the USPTO and DOC fulfilled their obligations under the FOIA to perform a search "reasonably calculated to uncover all relevant documents." We begin with the guiding principle that the FOIA does not require a perfect search, only a reasonable one. *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."). This Court's discussion in *Ethyl Corporation* is instructive:

> In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents. In demonstrating the adequacy of its search, [an agency may rely on

---

**13**Fawcett stated that the omission was not readily evident because every unit asked to search responded, and Zele's name appeared on various documents that had been provided in response to the search request. A USPTO interrogatory response also stated that all of the units asked to search responded to the search requests.

> an] affidavit [that is] reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search.

25 F.3d at 1246-47 (internal quotation marks and citations omitted).[14]

The USPTO's decision to use the searches conducted in response to the Media requests as the starting point for responding to the R&HW requests was not inherently unreasonable and appears to be a practical and common-sense approach. The requests sought similar information related to the same subject matter. In creating the initial search, the Agencies determined which offices and individuals likely possessed responsive documents, and then sent detailed and expansive instructions for conducting the search. Those instructions set forth non-exclusive search suggestions

---

[14]This inquiry mirrors that of other Circuit courts. *E.g.*, *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1120 (D.C. Cir. 2007) ("[F]ailure of an agency to turn up one specific document in its search does not alone render a search inadequate [and] mere speculation that as yet uncovered documents might exist . . . is not enough to undermine the determination that the agency conducted an adequate search for the requested records.") (internal quotation marks and citations omitted); *Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 559 (1st Cir. 1993); *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990) ("The adequacy of an agency's search for documents requested under FOIA is judged by a reasonableness standard. Under this standard, the agency need not show that its search was exhaustive. Rather, the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.") (internal quotation marks and citations omitted), *rev'd on other grounds sub nom.*, *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991); *Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (holding that when the reasonableness of an agency's search is challenged, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the search for those documents was adequate" (emphasis omitted)).

responsive to information also sought in R&HW's requests. Furthermore, the Agencies' search requests were submitted to the offices and individuals deemed most likely to possess responsive information. Offices and individuals that were not included were specifically believed not to possess responsive materials. Substantial portions of the requests overlapped, and wholly new and independent searches for each request would be duplicative and without a discernible benefit. Simply put, the FOIA did not require the USPTO to perform an entirely new, duplicative search for each request.

Moreover, although the Agencies relied on the Media requests as the starting point for responding to the R&HW requests, that did not end their search for responsive information. Fawcett stated that the Agencies also independently reviewed each of the FOIA requests and identified areas where the requests differed. The USPTO then sent out additional instructions to relevant offices in order to encompass aspects of the R&HW requests that were not covered by the initial search. The DOC independently searched in accordance with the Hunton & Williams request. Thus, while the search requests substantially overlapped, the record is clear that the Agencies conducted additional, narrower searches tailored to each of the requests.

We also do not find persuasive R&HW's argument that the Agencies' searches were inadequate because responsive documents refer to other documents that were not produced. In support of its argument, R&HW cites as examples certain communications, documents, and a CD-ROM that it claims the Agencies' searches failed to produce. R&HW do not contend, nor can we discern, that the Agencies were compelled to expand the search terms they used in order to discover the materials R&HW claim should have been found. Instead, R&HW simply assert that the Agencies' searches were inadequate because they failed to produce these documents.

However, as noted above, the relevant inquiry is not whether the Agencies' search uncovered every potentially

responsive document, but whether the search was "reasonably calculated to discover responsive documents." *See Maynard*, 986 F.2d at 559 ("The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'"). A "reasonably calculated search" does not require that an agency search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of the circumstances. *See SafeCard Servs., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The Agencies' failure to produce certain specific documents does not, of itself, yield the conclusion that the search was inadequate.

We also reject R&HW's contention that Zele's and Bost's initial failure to perform the requested searches renders the entire search suspect. When the USPTO found out that Zele inadvertently had not received the search requests, the USPTO required that she perform searches responsive to the R&HW requests. And when Zele informed Fawcett that Bost likely had responsive materials as well, Bost also received the requests and conducted the searches. These efforts demonstrate the USPTO's good faith in conducting a thorough search to comply with FOIA. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (stating that an agency's duty is to make "a good faith effort to conduct a search for the requested records."). Where an oversight occurred, the USPTO explained the reason for the mistake and took appropriate steps to correct it so that all individuals known or believed to possess responsive materials performed the searches.

R&HW also identify three Agency units that purportedly never received any search requests: the Central Reexamination Unit ("CRU") and Technology Central 2600, both in the USPTO, and the Bureau of Industry and Security ("BIS") in the DOC. The record shows that Lissi Marquis, the director of the CRU, was among those individuals who were told they

"must" perform the initial Rein search. Pursuant to USPTO policy, she was also directed to forward the search request to other individuals in her unit who worked on the Campana patents and reexaminations. It is reasonable to infer from Fawcett's affidavits, the credibility of which we have no reason to doubt, that Marquis—and therefore the CRU—was not asked to perform any of the supplemental searches because Fawcett determined she would not have documents responsive beyond the initial searches.

The USPTO avers that Jin Ng, the director of Technology Center 2600, was "deemed not to have" responsive material and therefore was not asked to conduct any searches. Zele and Bost, the two individuals at Technology Center 2600 the USPTO knew or learned would have responsive material, ultimately performed the requested search.[15] R&HW speculate, without any specific basis for doing so, that the entire Technology Center 2600 unit should have been required to search simply because some individuals in those units had responsive materials, or were mentioned in other responsive documents. The FOIA does not require the Agencies to search every employee so long as the searches are "reasonably calculated to discover responsive materials." *Cf. Ethyl Corp.*, 25 F.3d at 1246-47. R&HW have failed to raise substantial doubt as to the adequacy of the Agencies' searches, which were targeted to the specific individuals and units they believed would likely possess documents responsive to R&HW's request.

R&HW also cite the DOC's failure to search for documents responsive to the Hunton & Williams request in the BIS. To support their contention that BIS should have been searched

---

[15]Moreover, Zele voluntarily informed Fawcett that she had not received the search requests, and she offered the name of another individual in Technology Center 2600 that she believed would also have responsive documents. It is reasonable to assume that she would have also provided the names of other individuals within that unit who also had responsive material, had she known of any.

for responsive documents, R&HW submitted e-mails produced during a FOIA request submitted to the Department of Justice. Those e-mails show correspondence to and from individuals in BIS discussing the litigation between NTP and RIM. The Hunton & Williams search request did not specifically request the DOC to search the BIS. The DOC provided no explanation of why BIS was specifically not searched, although it is reasonable to conclude from Parson's declaration that BIS was not deemed to possess responsive documents. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. 1998).[16]

The Agencies were not required to look beyond the four corners of R&HW's requests when formulating their searches, nor were they required to chase rabbit trails that may appear in documents uncovered during their search. Instead, it was the Agencies responsibility to develop a search "reasonably calculated to uncover all relevant documents," based on R&HW's requests. This they have done. If R&HW discover leads in the documents produced as a result of their FOIA requests, they may pursue those leads through a second FOIA request specifying locations to be searched. *See Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Accordingly, we hold the district court did not err in concluding the Agencies' searches were adequate and in granting summary judgment as to that issue.

---

[16]R&HW's further reliance on *Campbell* is unavailing, however, because in that case the Circuit Court of Appeals for the District of Columbia addressed an agency's duty to expand the nature of its search where obvious leads arose from the documents produced in the agency's own initial search. 164 F.3d at 28-29. In this case, however, the DOC search did not produce the e-mails R&HW rely upon to assert that BIS should have been searched. The DOC fashioned its search consistent with the locations it deemed most likely to possess responsive materials, and R&HW point to nothing uncovered in the DOC's search that would have led it to determine it needed to expand its search to the BIS.

### B.    Documents Withheld as Exempt

R&HW also contend the district court erred in holding that the Agencies properly withheld, in whole or in part, hundreds of documents by claiming those documents were exempt from disclosure under § 552(b)(5) ("Exemption 5").[17] Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* It encompasses, inter alia, the deliberative process and attorney-client privileges.[18] The government bears the burden of demonstrating that a requested document falls under the exemption. 5 U.S.C. § 552(a)(4)(B).

### 1.    Adequacy of the *Vaughn* Index

As noted earlier, the Agencies elected to provide a *Vaughn* index in lieu of producing withheld documents for *in camera* review by the district court. *See Vaughn*, 484 F.2d at 827. To substitute for *in camera* review, a *Vaughn* index must describe the withheld material with "reasonable specificity" so that the reviewing court can determine whether the exemption from disclosure applies. *Ethyl Corp.*, 25 F.3d at 1249-50; *see also Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 367-68 (11th Cir. 1993).

R&HW argue that the USPTO's *Vaughn* index is facially inadequate to serve as a substitute for *in camera* review for two reasons. First, they assert several hundred document entries fail to contain the document's author, recipient, or

---

[17]FOIA specifies nine exemptions from its general disclosure provisions. § 552(b). The only provision of that statute before us in this appeal is (b)(5). All of the § 552(b) exemptions are designed to safeguard public interests against the harms that could arise from overly broad disclosure. FOIA exemptions are, however, narrowly construed to favor the Act's presumption of disclosure. *Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 354 (4th Cir. 1991).

[18]*See infra* section III.B.2.

date, and are therefore insufficient under this Court's analysis in *Ethyl Corporation*. Second, they contend several hundred document entries contain insufficient summaries of their content so as to notify the district court whether the document properly falls under Exemption 5.[19]

### a.   Identification of the Document's Author or Recipient

R&HW claim the district court erred in finding the *Vaughn* index entries were sufficient for "at least 334 documents" that do not identify their author, recipient, date of origin, or source. We have reviewed both the *Vaughn* index and Faw-cett's declarations regarding the compilation of materials on the index. Almost all of the documents cited by R&HW state "n/a" in the index column devoted to identifying the "employ-ees" authoring or receiving the listed document.[20] We agree with R&HW that the *Vaughn* index documents that fail to include information about their author and recipient, or which fail to provide an explanation that adequately substitutes for this information, do not contain adequate information for the district court to have determined whether they were properly withheld.[21]

---

[19]We observe that R&HW challenge some documents for more than one reason. Therefore, adding the number of documents they challenge in each category does not reflect the actual total number of documents R&HW challenge.

[20]The 334 documents R&HW specifically identify for this proposition are referred to in the briefs and listed in the joint appendix at 1087-88. We have checked this list and note that a few of the documents do not have the deficiencies cited by R&HW or else have been misidentified. On remand, the district court should determine which of the 334 documents actually fail to list their author or recipient. For purposes of determining the issue before us on appeal, we conclude that those documents specifi-cally identified by R&HW and challenged based on the failure to identify their author and recipient do not contain an adequate description for deter-mining whether the exemption applies.

[21]We do not agree with R&HW that the failure to include a document's date renders a *Vaughn* index entry automatically inadequate, although in

In *Ethyl Corporation*, this Court observed that where the description of a document listed in the *Vaughn* index

> fails to identify either the author or its recipient, those persons' relationships to the decisionmaking process cannot be identified and it becomes difficult, if not impossible, to perceive how the disclosure of such documents would result in a chilling effect upon the open and frank exchange of opinions within the agency.

25 F.3d at 1250. Similarly, the Agencies have not identified the author or recipient of many documents they claim are protected by the deliberative process privilege. Nor have they provided any information as to the origin or intended target of the challenged documents. Without this information, it is "difficult, if not impossible," to determine whether they fall under Exemption 5. *Cf. Ethyl Corp.*, 25 F.3d at 1250.

*Ethyl Corporation* left open, as do we, the possibility that the district court may be able to determine whether the deliberative process privilege applies without knowing the author and recipient. However, the Agencies' *Vaughn* index simply states "n/a" and provides no information regarding who created the document, for whom it was prepared, or to whom it was distributed. Without this contextual information, we can-

---

many situations the date of the document may be a critical factor. For documents that the Agencies claim are exempt due to the attorney-client privilege aspect of Exemption 5, the date of the document may not always be a necessary component for asserting the privilege. But even where the date is a useful tool for verifying that a document is protected by the deliberative process privilege's "predecisional" requirement, "[d]ates are but one way to illustrate a chronology, and the [agency] may have other ways to prove that the undated documents were indeed predecisional." *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Therefore, the date is one of several ways in which the *Vaughn* index can provide adequate information to show that the document contains information protected by the deliberative process privilege.

not determine whether Exemption 5 protects the challenged document from disclosure.[22] In requiring *Vaughn* index entries to include information as to the author and recipient of the documents, we are mindful that the Agencies may still be able to satisfy their burden for purposes of withholding the document by revising the *Vaughn* index to correct the deficiencies, by producing the documents for *in camera* review, or by a combination of methods. However, we find that the challenged entries, which fail to provide any information about the document's author or recipient, are inadequate under *Ethyl Corporation*. The district court thus erred in finding these challenged *Vaughn* index entries provided an adequate basis from which to determine that Exemption 5 applied to those documents.

### b.   Document Descriptions

R&HW also assert the district court did not have an adequate factual basis for determining whether several hundred of the *Vaughn* index entries fell within Exemption 5 because the entries contain inadequate factual descriptions of the documents. They claim these entries "provide[ ] little or no factual information about the subject matter of the withheld documents." They assert that the Agencies must provide more information than simply asserting the document contains "internal agency" "deliberations," "discussions," or "opinions," or that are claimed to be exempt because they are "drafts" rather than a final decision of the Agencies. R&HW contend

---

[22]The directory of individuals provided at the beginning of the Agencies' *Vaughn* index is not sufficient to remedy this particular defect because it fails to provide information specific to each document, or at least smaller classifications of documents, for which the exemption is claimed. For obvious reasons, the deliberative process privilege does not exempt a document simply because the document originated from or was addressed to someone within one of the Agencies. Moreover, because the list names the individual authors or recipients of the other documents on the *Vaughn* index, it does not assist the reviewing court in determining authors and recipients of the challenged documents.

that these cursory descriptions do "not tell the reader anything about the document, what issue or issues it addresses, or how it relates to the decisional process."

Once again, our decision in *Ethyl Corporation* instructs us as to the level of detail necessary to adequately describe the withheld document.

> The court in *Vaughn* . . . directed that the government provide a detailed justification for its exemption and index the documents against the justification, fragmenting the documents into segregable parts. The court emphasized a need for specificity and itemization to permit the adversary process to function. If the index is so vague as to leave the district court with an inability to rule, then some other means of review must be undertaken, such as *in camera* review.

25 F.3d at 1250. These principles led the Court in *Ethyl Corporation* to find the *Vaughn* index provided in that case to be insufficient because entries "articulate[d] the Exemption 5 privilege in general terms, using FOIA language, and couple[d] the statement of privilege for each document with a general description of the document." *Id.* at 1249. Similarly, the Court of Appeals for the District of Columbia Circuit has observed:

> [C]onclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases. A typical line from the index supplied in this case identifies who wrote the memorandum, to whom it was addressed, its date, and a brief description of the memorandum such as "Advice on audit of reseller whether product costs can include imported freight charges, discounts, or rental fees. Sections 212.93 and 212.92." . . . That is all we are told, save for the affidavits submitted by the

regional counsel which repeat in conclusory terms that all the documents withheld fall within one or another of the exemptions.

Such an index is patently inadequate to permit a court to decide whether the exemption was properly claimed . . . . Contrast the index submitted by the agency and described in *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242 ([D.C. Cir.] 1977), which clearly describes the characteristics of the documents which the agency felt brought them within the exemption claimed, and which was still inadequate to permit the court to determine whether all elements of the privileges were present in each document.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980); *see also City of Virginia Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253-54 (4th Cir. 1993) ("the burden is on the agency to correlate, with reasonable specificity, materials within a document with applicable exemptions"); *Mead Data Cent., Inc.*, 566 F.2d at 251 ("[W]hen an agency seeks to withhold information[,] it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.").

Our review leads us to conclude the Agencies' descriptions of many of the challenged documents lack the specificity and particularity required for a proper determination of whether they are exempt from disclosure. This is especially true for the many documents challenged as containing insufficient descriptions for exemption purposes and which *also* fail to identify their author, recipient, or a date. A few examples elucidate our concerns. Documents 1500 and 1502 are reports or lists that were withheld in full. Their subject is identified as "application/control number: 90/006,676 Art Unit: 2645." The

only explanation for withholding the documents is that they are "draft[s] . . . not used as the final decision. Accordingly, [they are] predecisional and deliberative. Facts contained in the redlined draft are facts selected from a larger body of facts that represent the give and take of internal Agency deliberation, and cannot be released." (J.A. 544.) The same explanation is given for Document 978, which is only identified as "pat reg;data" and "draft document," (J.A. 452), documents 633, 635, and 637, which are only identified as "legal;pat reg" about the NTP reexamination proceedings, and document 645, which is identified as an e-mail discussion about "Blackberry 3rd Party IDS" and the NTP reexamination proceedings. (J.A. 394-95.)

Entries of this nature do not provide sufficient information as to the contents of the documents to determine whether the deliberative process privilege applies. *See Judicial Watch, Inc.*, 449 F.3d at 152 (finding inadequate statements that a document is a "fax" or "draft internal q&a" because the statement does not "describe the withheld information [and tell] the court little about the deliberative nature of the information contained in the document in question [or] the information conveyed [therein]"). Although the subject is broadly identified as the reexamination proceedings, that topic alone does not bring the material within the scope of Exemption 5. When the entry simply claims that the document is a "draft" and relates to the "NTP Reexamination Proceeding," such as Document 645, the reviewing court does not have any tools to determine what it is a draft of, how it relates to the reexamination process, and what "deliberative" information it contains that qualifies for protection under Exemption 5.

Without revealing any facts about the documents' contents, the Agencies have merely asserted their conclusion that the document is exempt, employing general language associated with the deliberative process privilege. But the entries provide no salient information by which the district court can independently assess the asserted privilege. To find such superficial

entries to be sufficient would permit the Agencies to evade judicial review because the district court and we are entirely dependent upon the Agencies' assertions that the documents were appropriately withheld. *See Judicial Watch, Inc.*, 449 F.3d at 147 ("Broad, sweeping claims of privilege without reference to the withheld documents would impede judicial review and undermine the functions served by the *Vaughn* index requirement. The agency must therefore explain why the exemption applies to the document or type of document withheld and may not ignore the contents of the withheld documents."). Such descriptions are inadequate as a matter of law. *See Ethyl Corp.*, 25 F.3d at 1250 (finding inadequate the "little information . . . provided by much of the *Vaughn* index for testing the [agency's] deliberative process privilege claims, leaving the district court and us entirely dependent upon the [agency's] own assertions that the release of the documents in question" fall within the claimed Exemption).[23]

When examining the adequacy of a *Vaughn* index entry, the focal point is whether it contains an adequate factual basis to support the claimed exemption. As noted, the Agencies have claimed the deliberative process privilege for all of the challenged documents, and the attorney-client privilege for a few others. Thus, to be adequate, each entry must provide enough facts for the district court to determine that the document was "predecisional" and "deliberative." And the documents also withheld pursuant to attorney-client privilege must contain enough facts for the district court to determine that the document contains confidential communication between a government lawyer and a government entity (the client), in the

---

[23]We are aware, especially with this volume of documents, certain topics and justifications may arise frequently. The Agencies are certainly permitted and encouraged to refer to commonalities among documents to aid the process of reviewing the *Vaughn* index. *See, e.g.*, *Judicial Watch, Inc.*, 449 F.3d at 147-48; *Neely v. Fed. Bureau of Investigation*, 208 F.3d 461, 467 (4th Cir. 2000). However, the Agencies cannot abdicate their duty to sufficiently identify the characteristics of the document's contents to enable a reasoned judgment on its claimed exemption.

context of "securing a legal opinion, legal services[,] or assistance in legal proceedings," and that the privilege has not been waived. *See In re Grand Jury Investigation*, 399 F.3d 527, 532-33 (2d Cir. 2005); *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 71 (1st Cir. 2002).

In sum, we find that the district court erred in finding the *Vaughn* index adequately described all of the challenged documents listed on it. The Agencies bear the burden of providing sufficient factual information as to the document's nature or content from which the district court can independently assess the applicability of the claimed exemption. *See Neely*, 208 F.3d at 467 ("It is the [agency's] burden to establish for the district court that the denominated documents in fact include information protectable under the Exemption[ ].").

R&HW has thus shown that summary judgment was inappropriate because the district court lacked an adequate factual basis to determine whether the claimed exemption applied. We believe the proper remedy is that this case be remanded to the district court for further proceedings, including the determination of which of the challenged *Vaughn* index documents fail to satisfy the Agencies' burden in a manner consistent with the principles we have expressed.

We recognize the burden that our instructions on remand may ultimately impose on the Agencies. We are cognizant that the burden may be particularly heavy on an agency when the request for documents was of the magnitude represented in the case at bar. In that regard, we do not require that the descriptive information be so detailed that it would serve to undermine the important deliberative processes protected by Exemption 5. We also note that the district court's assessment of the adequacy of descriptive information must be given appropriate respect, particularly in close calls. To do otherwise would encourage unnecessary remands and subsequent appeals on issues that, while important, are also collateral in nature. Thus, our remand is not intended to drive either the

district court or the Agencies to distraction, but simply to provide a non-conclusory agency declaration that will enable the district court to properly perform its statutory task.[24]

Accordingly, we hold that the district court erred in finding the *Vaughn* index contained adequate descriptive information to determine whether the challenged documents were properly withheld in whole or in part. We reverse the award of summary judgment as to the documents R&HW challenge on adequacy grounds for the claim of exemption and remand to the district court for further proceedings consistent with this opinion. We affirm the district court's award of summary judgment as to the adequacy of the *Vaughn* index entries for the documents R&HW does not challenge.

## 2.   Applicability of Exemption 5

Next, R&HW contend the district court erred because the USPTO failed to show that many of the documents it claimed as exempt fell within Exemption 5. Some of the documents R&HW challenge on this basis overlap with those challenged above. As we have explained above, if the district court lacked an adequate factual basis for determining whether the exemption applied, it erred. We consider in this section only the documents R&HW challenge that do not overlap, that is, the *Vaughn* index is adequate to determine the application of the claimed exemption. The sole issue we now examine as to those documents is the district court's determination that

---

[24]We also recognize that in some cases the sheer magnitude of the requests and the disclosure makes it unrealistic to expect that a *Vaughn* index would be a work of art or contain the uniform precision that a substantially smaller universe of requested documents would entail. Parties who frame massive and all-inclusive requests for documents should expect some fall-off from perfection when the agency responds. In such cases, the district court on remand, and an appellate court upon review, may be entitled to conclude that further proceedings were unnecessary in light of the overall magnitude of the request and the overall sufficiency of the agency's efforts.

Exemption 5 applies, in whole or in part. As noted earlier, Exemption 5

> protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.

*Dep't of the Interior v. Klamath Water Users Protective Ass'n* ("*Klamath*"), 532 U.S. 1, 8 (2001).[25] Among the privileges Exemption 5 encompasses are the attorney-client privilege, the attorney-work product privilege, and the deliberative process privilege. *Id.* at 8-9; *see also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-50 (1975).[26] Exemption 5 is "designed to protect the quality of administrative decisionmaking by ensuring that it is not done 'in a fishbowl.'" *City of Virginia Beach*, 995 F.2d at 1252; *see also Klamath*, 532 U.S. at

---

[25]"Although Congress clearly intended to refer the courts to discovery principles for the resolution of [Exemption 5] disputes, the situations are not identical, and the Supreme Court has recognized that discovery rules should be applied to FOIA cases only 'by way of rough analogies.'" *Mead Data Cent., Inc.*, 566 F.2d at 252.

[26]The Circuit Court of Appeals for the District of Columbia Circuit aptly distinguished the two privileges:

> the attorney-client privilege permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts, while the deliberative process privilege directly protects advice and opinions and does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process.

*Schlefer v. United States*, 702 F.2d 233, 245 n.26 (D.C. Cir. 1983) (citing *Mead Data Cent., Inc.*, 566 F.2d at 254 n.28)).

8-9); *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc).

### a.    "Inter-agency or intra-agency" Documents

R&HW contend the Agencies improperly withheld or redacted documents that are not "inter-agency" or "intra-agency" documents, as required to claim Exemption 5. *Cf.* 5 U.S.C. § 552(b)(5). Although Exemption 5's "inter-agency or intra-agency memorandums or letter" requirements is not disputed as often, it is "no less important" than Exemption 5's other requirements. *Klamath*, 532 U.S. at 9.

Among the documents R&HW identify in support of this inter-agency, intra-agency argument are the "at least 334 documents" that do not identify the author or recipient. We do not address the merits of Exemption 5 as to those entries because we have already determined that those entries were factually inadequate to reach that issue, *supra* section III.B.1.

We have reviewed the three remaining document entries on the *Vaughn* index and the redacted versions of the documents that R&HW challenge on this basis and find their contentions to be without merit.[27] Although Document 568 indicates that someone at the Department of Justice (DOJ) was in communication with an RIM attorney, the contents of the e-mail discussion do not support R&HW's assertion that the redacted information in the e-mails was ever communicated to anyone outside the USPTO. (J.A. 1042-43.) Similarly, there is no evidence that the redacted material in Documents 618 or 619, which consist of e-mail discussions between USPTO employees, contains information originating from or communicated to RIM attorneys. (J.A. 1053-57.) The district court did not err in granting summary judgment as to these three entries.

---

[27]These documents are numbers 568, 618, and 619. (J.A. 384, 391, and 392.)

b.    Deliberative Process Privilege

R&HW next assert the district court improperly found the deliberative process privilege protected the Agencies' documents because the *Vaughn* index entries did not identify "the formulation or exercise of policy-oriented judgment at stake for each document on which it asserted the deliberative process privilege." It also contends the district court erred in allowing the Agencies to withhold or redact information that they contend was segregable from protected information.

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance "the quality of agency decisions" by protecting open and frank discussion among those who make them within the Government.

*Klamath*, 532 U.S. at 8-9 (internal citation omitted). Documents withheld or redacted pursuant to the deliberative process privilege must be both "predecisional" and "deliberative."[28] *See City of Virginia Beach*, 995 F.2d at 1253. The "[d]eliberative material reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* (internal quotation marks and citations omitted). Thus, the privilege will encompass "recommendations, draft documents, propos-

---

[28]"Predecisional documents are prepared in order to assist an agency decisionmaker in arriving at his decision." *City of Virginia Beach*, 995 F.2d at 1253 (internal quotation marks and citations omitted). Appellants do not contend the documents withheld by the Agencies were not predecisional; instead, they argue the Agencies failed to show that the documents were deliberative in nature. While there is some overlap between the two requirements for asserting the deliberative process privilege, to the extent that the analysis is separate, we do not review whether the documents were "predecisional."

als, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (internal quotation marks omitted).

We hold the district court did not err in concluding the Agencies were entitled to withhold the challenged documents—in whole or in part—as exempt pursuant to the deliberative process privilege. At the outset, we observe that R&HW's FOIA requests were obviously designed to discover information that would naturally fall within this privilege, including internal communications regarding the Campana patents and ongoing patent reexaminations. *See Barney v. Internal Revenue Serv.*, 618 F.2d 1268, 1273 (8th Cir. 1980) (per curiam) (finding it "apparent by the very nature of plaintiffs' request" that documents would be exempt). A patent reexamination is an administrative proceeding in which patent examiners inquire whether a patent was issued in error based on prior art patents or printed publications. 35 U.S.C. §§ 301-302 (2000).[29] Patent examiners act as quasi-judicial officers during the process of issuing and reexamining patents. *See United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 363 (1888) (patents issue through quasi-judicial proceedings); *W. Elec. Co. v. Piezo Tech., Inc.*, 860 F.2d 428, 431 (Fed. Cir. 1988) ("Patent examiners are quasi-judicial officials.") (citation omitted).

That many responsive documents would reveal the deliberative process of the USPTO can be fairly concluded from the nature of the request, which broadly encompassed the USPTO's reexamination of the Campana patents. We have reviewed a representative sample of the documents listed on the *Vaughn* index having adequate factual descriptions. We conclude that the district court properly determined they were

---

[29]Any person may file a request for reexamination. § 302. "Congress intended reexaminations to provide an important 'quality check' on patents that would allow the government to remove defective and erroneously granted patents." *In re Swanson*, 540 F.3d 1368, 1375 (Fed. Cir. 2008).

predecisional and deliberative, containing internal discussions regarding the progress of, procedures for, and determinations in the patent reexaminations and the ongoing litigation surrounding NTP and RIM's patents.[30] These documents then are a product of the USPTO's quasi-judicial role and are clearly protected from disclosure by the deliberative process privilege.

Contrary to R&HW's argument, the Agencies were not required to identify the specific policy judgment at issue in each document for which the deliberative process privilege is claimed. As this Court stated in *City of Virginia Beach*:

> [T]he government need not identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process . . . the line between predecisional documents and postdecisional documents may not always be a bright one.

---

[30]For example, document 662 is an e-mail discussion, which was released in redacted form, regarding a "draft merger order" in the NTP reexamination proceedings. The *Vaughn* index indicates that USPTO employees offered views about the "proper use of merger proceedings." (J.A. 397.) Document 756 is an e-mail discussion, which was released in redacted form, regarding case law and the "application of prior art" in reexamination proceedings. (J.A. 412.) Documents 819 and 821 are e-mail discussions, released in redacted form, discussing proposed agency action on the pending NTP reexaminations. (J.A. 424.) Documents 1128, 1129, 1131, 1133, and 1134 are e-mail discussions between USPTO employees regarding "proposed agency action regarding pending NTP reexamination," comparing and evaluating the appropriateness of different office actions. (J.A. 476-77.) Documents 1528, 1529, and 1530 are e-mail discussions regarding the NTP reexaminations, specifically about the "proper use of a rejection in the reexamination proceedings." (J.A. 551.)

995 F.2d at 1253 (quoting *NLRB*, 421 U.S. at 151-52) (citing *Access Reports*, 926 F.2d at 1196 (rejecting requirement that government "pinpoint" a single decision to which the [withheld] memorandum contributed)).[31]

We further conclude that the district court did not err in finding the Agencies' redactions of documents were appropriate.[32] Because the FOIA focuses on information rather than documents, "[a]ny *reasonably* segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." § 552(b) (emphasis added). Therefore, "non-exempt portions of documents must be disclosed unless they are 'inextricably intertwined' with exempt portions," *Mead Data Cent., Inc.*, 566 F.2d at 260, such that the disclosure of those facts would "compromise the confidentiality of the deliberative information that is entitled to protection under Exemption 5," in which case the factual materials need not be disclosed. *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 92 (1973).

R&HW asserts the Agencies inconsistently redacted information in different versions of the same documents, rendering their entire method of claiming redactions suspect. (Blue Br. 47-50.) We have reviewed the documents cited by R&HW and find no error in the district court's decision allowing the Agencies' redactions. In many instances, the inconsistencies are minor, and in no way suggest the Agencies were not entitled to withhold the remaining portions of the documents

---

[31]Similarly, the Court of Appeals for the District of Columbia Circuit has held that Exemption 5 may exempt a document even where "the document [does not] contribute to a single, discrete decision." *Access Reports*, 926 F.2d at 1196.

[32]Upon determining that a document contains exempt material, the district court has a duty to examine whether portions of the documents "can be excised in order that . . . non-exempt portions can be disclosed." *Irons v. Gottschalk*, 548 F.2d 992, 996 (D.C. Cir. 1976); *see* 5 U.S.C. § 552(b) ("any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt.").

under Exemption 5. (E.g., J.A. 1042-43, with 1065-66.) Especially where a FOIA request yields the number of responsive documents as did the R&HW requests, minor differences in a line-by-line redaction are not unexpected.

R&HW also refer to a January 2005 document that was initially withheld pursuant to Exemption 5, but subsequently released in full. R&HW contend the document's full content offers no basis for claiming Exemption 5, and that this example "calls into question the information [they have] redacted in other documents. R&HW offers no support for this proposition, nor any evidence of bad faith on the part of the Agencies. We decline R&HW's invitation to infer from this one example that the Agencies have improperly invoked Exemption 5 to redact other documents.

R&HW further assert the Agencies improperly redacted the subject lines of e-mails, file names to documents attached to e-mails, patent claim reference numbers, meeting agenda topics, and other identifying "factual" information that was not subject to the deliberative process privilege. Given the FOIA's strong preference for disclosure, factual information that does not compromise the exempt portions of the documents should be disclosed. *Mink*, 410 U.S. at 91. This standard is high, but not impregnable. Thus, facts contained in such documents must be considered within the context of the document as a whole, and within the context of the document as part of the agency's overall decision-making process. *Id.* at 91-92; *see also City of Virginia Beach*, 995 F.2d at 1256 ("Disclosure of much of the material necessarily would reveal the opinions of agency personnel on the credibility and probity of the evidence relating to each allegation such that the revelation would divulge the substance of any related recommendations with which the factual findings comport. More generally, by disclosing the direction of the agency's internal investigation and retrospective assessment, revelation would impermissibly encroach upon the decisionmaking process." (internal alterations, quotation marks, and citations omitted)).

We have reviewed the documents R&HW challenge and find no error in the decision below. Information reasonably described as "facts" when looked at in the vacuum that R&HW describe are nonetheless protected from disclosure when—as revealed when examining the information's context—disclosing that information as part of a larger document would reveal the very predecisional and deliberative material Exemption 5 protects. Here, the Agencies provided a *Vaughn* index describing, as relevant, the reasons for the claimed exemption and a claim that the facts contained in the document were not segregable from the opinions expressed therein. In addition, Fawcett provided an affidavit averring he personally conducted a line-by-line review of each document to determine what information to release or withhold, in whole or in part. The combination of these statements, coupled with a review of the documents R&HW challenge supports the Agencies' decisions regarding the information redacted.

Accordingly, the district court did not err in holding the Agencies properly withheld the challenged documents in whole or in part based on the deliberative process privilege. Nor did it err in concluding the challenged redacted documents did not contain segregable material.

### c.   Attorney-Client Privilege

R&HW next contend that the Agencies failed to show that the documents they withheld under the attorney-client privilege component of Exemption 5 were protected by that privilege.

The attorney-client privilege is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It "is not limited to communications made in the context of litigation or even a

specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Coastal States Gas Corp.*, 617 F.2d at 862. Moreover, the privilege "protects 'not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004) (quoting *Upjohn*, 449 U.S. at 390)).

"[A]n agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Coastal States Gas Corp.*, 617 F.2d at 863; *see also Mead Data Cent., Inc.*, 566 F.2d at 252 ("[T]he attorney-client privilege assures [the client] that confidential communications to his attorney will not be disclosed without his consent. We see no reason why this same protection should not be extended to an agency's communications with its attorneys under [Exemption 5]."). "Where the client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication." *Mead Data Central, Inc.*, 566 F.2d at 253 n.24.

To fall within the privilege, the USPTO must also demonstrate the confidentiality of the "information on which [the documents] are based," either by showing an express or implied grant of confidentiality based on the circumstances surrounding the creation and dissemination of the document. *See Maine v. United States Dep't of the Interior*, 298 F.3d at 71-72. Similarly, the attorney client privilege can be waived if the document is published, or disclosed to private individuals or to nonfederal agencies. *Mead Data Cent., Inc.*, 566 F.2d at 253.

Here, Fawcett's declaration describes when a document was marked as exempt from disclosure based on attorney-client privilege:

[T]he identity of the attorney is provided in the to/from list and may be further identified on the separate List of Employee Names and Titles; the client for all of this group of documents is the USPTO; the privilege was only asserted where the attorney was acting as an attorney; the substance of the communication is indicated on the amended *Vaughn* Index to the extent possible without revealing privileged information; and there is no indication that the confidential communications therein were inappropriately disclosed to unauthorized parties.

(J.A. 277.) Furthermore, the communications involved the exchange of facts and legal opinion contemplated by the attorney-client privilege.[33] The documents withheld or redacted pursuant to this privilege contain discussions regarding the patent reexamination process and the ongoing litigation regarding the patents subject to the reexaminations. We find that Fawcett's declaration, coupled with the *Vaughn* index descriptions, support the Agencies' claim of attorney-client privilege for the challenged documents.

Nor is there any support for R&HW's assertion that attorney-client privilege was waived through disclosure to a third party. Document 1599 is another copy of the same August 2005 e-mail between a DOJ attorney and USPTO employees discussed earlier. Although the e-mail indicates

---

[33]Descriptions of the documents withheld or redacted pursuant to the attorney-client privilege, for example, include: "Employee (attorney) discussion about the potential for a lawsuit by RIM regarding the time it took to perform the reexamination made in anticipation of litigation" (J.A. 391); "Internal Agency discussion between Agency Solicitors and Examiners regarding proposed Agency action on pending re-examination" (J.A. 416); "Employee discussion regarding merger of a proceeding." (J.A. 468-69); "Attorney-client communication in the form of legal advice provided by the General Counsel and an Associate Solicitor to drafters of Agency response were redacted. Also redacted were comments made by Agency employees concerning proposed content of letter." (J.A. 474).

that an attorney at the DOJ was in communication with an RIM attorney regarding the patent infringement litigation, the DOJ attorney is seeking the USPTO's opinion on what the DOJ's position on a particular issue should be. The DOJ attorney's e-mail was then forwarded to several employees within the USPTO, who appear to offer their view and opinion on what the USPTO's position should be. Nothing in the e-mail discussion support R&HW's assertion that the redacted information in the e-mails was ever communicated to anyone outside the USPTO. (J.A. 1065-66; compare with 1042-434.)

Lastly, R&HW assert that any discussions regarding the patent infringement action between NTP and RIM cannot be protected by attorney-client privilege. While it is true that the USPTO was not a party to that litigation, the litigation and the patent reexaminations involved the same patents and many similar issues. Therefore, it is not improbable that USPTO employees, including the patent reexaminers, would discuss new developments in the NTP-RIM litigation. Because the attorney-client privilege extends beyond communications in contemplation of particular litigation to communications regarding "an opinion on the law," *e.g.*, *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982), these communications can still be afforded protection under the attorney-client privilege.

On this record, the district court did not err in concluding the USPTO properly withheld or redacted materials based on the attorney-client privilege, as protected by Exemption 5.[34]

---

[34]Lastly, R&HW contend the district court erred in failing to conduct an in camera review of all the documents the Agencies withheld in whole or in part. 5 U.S.C. § 552(a)(4)(B) permits a district court to "examine the contents of such agency records in camera," but it imposes no mandate upon the district court to do so. See *Ctr. for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 20 (D.C. Cir. 1984). It is within the discretion of the district court to determine whether in camera inspection is needed in order to make a de novo determination of the claims of exemption. See *Ray v.*

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment as to the adequacy of the Agencies' searches in response to the R&HW FOIA requests. We reverse the district court's grant of summary judgment with regard to the documents R&HW challenged based on *Vaughn* index descriptions that do not include author, recipient, or necessary factual descriptive information. We remand to the district court for further proceedings as to those entries in the *Vaughn* index. We affirm the district court's grant of summary judgment as to the adequacy of the *Vaughn* index for all of the documents R&HW do not challenge.

We also affirm the district court's award of summary judgment as to those documents containing an adequate factual basis, because Exemption 5 applied and the documents were properly withheld under the Exemption. Furthermore, we affirm the district court's decision that the Agencies released the non-exempt portions of documents that were "reasonably segregable" from information subject to Exemption 5. Accordingly, the judgment of the district court is

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED.*

---

*Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). For the reasons set forth above, we remand the case because the Agencies' *Vaughn* index did not provide an adequate basis for the district court to determine whether certain documents were properly withheld or redacted pursuant to Exemption 5. On remand, the district court may once again exercise its discretion whether to conduct in camera review of the challenged documents, permit the Agencies to submit an adequate *Vaughn* index summary instead, or opt for a combination of methods.