**CARTER, FULLERTON & HAYES, LLC, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION, Defendant.**

**Case No. 1:08cv182 (GBL).**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 18, 2009.

John Laughlin Carter, Carter Fullerton & Hayes LLC, Alexandria, VA, John Edward Drury, Arlington, VA, for Plaintiff.

Lauren A. Wetzler, United States Attorney Office, Alexandria, VA, for Defendant.

### MEMORANDUM ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Federal Trade Commission's Motion for Summary Judgment. This case concerns Defendant's production and withholding of documents in response to Plaintiff Carter, Fullerton and Hayes' ("CFH") request pursuant to the Freedom of Information Act ("FOIA".) There are five issues before the Court. The first issue is whether the FTC has conducted an adequate and reasonably calculated search in response to Plaintiff's FOIA request if all requested locations were not searched, additional search terms were not included, and additional responsive documents were later discovered. The second issue is whether Plaintiff's challenge to documents originally withheld as statutorily exempt under Exemption 3 is still viable after subsequent disclosures by the FTC. The third issue is whether the FTC may withhold documents under Exemption 5 based on the deliberative process privilege without identifying the internal policy that the documents relate to, and without identifying the authors and recipients of the withheld documents by proper name. The fourth issue before the Court is whether the FTC must show that it has law enforcement authority in order to withhold documents based upon Exemption 7, exempting records compiled for law enforcement purposes. The fifth and final issue is whether the FTC has sufficiently demonstrated that the withheld documents do not contain segregable material. The Court holds that the FTC's search was adequate and reasonably calculated because: 1) it was appropriately limited to places likely to contain responsive documents; 2) an agency is not required to search all of the locations listed in a FOIA request, nor is it required to search those not listed; and 3) the subsequent discovery of documents does not *per se* impugn the validity of the search. Furthermore, the Court holds that subsequent disclosures by the FTC addressed any explicit concerns raised by Plaintiff with respect to Exemption 3 and therefore no question or challenge remains regarding the documents withheld under Exemption 3. In addition, the Court holds that the FTC may properly withhold documents under Exemption 7 without identifying the internal policy that the documents relate to or identifying the authors and

recipients of the withheld documents because no such requirement exists in the relevant statute or at common law and such information is not necessary in order for the Court to review the propriety of the withholding. The Court also holds that the FTC is not required to justify its law enforcement authority to withhold documents under Exemption 7 and that even if such a requirement existed, the FTC's investigation of anti-competitive activities in the liquor industry, as presented to this Court, is not in contravention of the Twenty-first Amendment. Finally, the Court holds that the FTC has sufficiently demonstrated that it has provided Plaintiff with all segregable material as upon review of the thorough and detailed *Vaughn* index and affidavits submitted by the FTC, and based on the careful consideration of each document and the legally supported justification for the withholding of documents after a segregability analysis.

## I. BACKGROUND

This case has its origins in the District of Columbia. Plaintiff Carter, Fullerton and Hayes, is a Virginia law firm that has filed numerous FOIA requests with the FTC pertaining to alcoholic beverages. On October 13, 2006, Plaintiff submitted a FOIA request to the FTC seeking the following:

> [A]ll documents ... relating to malt beverages; malt beverage manufacturers; malt beverage wholesalers/distributors; wine and distilled spirits manufacturers; wine and distilled spirits wholesalers/distributors; malt beverage, wine and distilled spirits retailers; any organizations representing the aforementioned and any entity communicating with [the] FTC or any division or office thereof ... on any aspect of the regulation of alcohol from January 2002 to present.

*Carter, Fullerton & Hayes v. Federal Trade Commission,* 520 F.Supp.2d 134, 137 (D.D.C.2007.) Following the release of certain responsive documents and the withholding of others under various exemptions, the FTC filed a motion for summary judgment. *Id.* In response, Plaintiff challenged the adequacy of the FTC's search, asserted that certain records were wrongfully withheld and that the *Vaughn* index produced by the FTC was insufficient for the court to evaluate the claimed exemptions. *Id.* at 138. After reviewing the parties' briefs, the *Vaughn* index, declarations, and conducting an *in camera* review, on October 25, 2007, the court granted summary judgment as to all claimed exemptions (2, 5, and 6), but denied summary judgment as to the segregability analysis of documents withheld under Exemption 5. *Id.* at 148. The court held that: 1) the FTC's search was an adequate and reasonable response to the FOIA request; 2) the *Vaughn* index provided an adequate basis for determining whether a work product or attorney-client privilege exemption applied to a document; 3) certain documents were properly withheld under the deliberative process privilege; 4) the FTC's withholding of personal identifiers of consumers who filed complaints was proper under the personal privacy exemption; and 5) the FTC did not provide an adequate explanation of segregability with respect to documents withheld in full pursuant to the deliberative process exemption. *Id.* at 134.

On November 20, 2007, Plaintiff submitted another FOIA request to the FTC seeking the following documents

> [A]ll documents ... relating to wine, spirits or malt beverages; malt beverage manufacturers; malt beverage wholesalers; wine and distilled spirits manufacturers; wine and distilled spirits wholesalers; malt beverage, wine and distilled spirits retailers; any organizations representing the aforementioned; and any entity communicating with FTC or any division or office thereof ... on

any aspect of the regulation of alcohol from this law firm's previous FOIA (FOIA 2007–00067) dated October 13, 2006 through completion of your production of this FOIA request.... Any document regarding the FTC's response and/or compliance with our previous FOIA dated 10/13/2006 (FOIA 2007–00067.)

(Compl. 5.) The request also sought documents pertaining to communication with other state and federal agencies, travel of FTC employees on business pertaining to alcohol-related issues, and communications with certain named individuals. (*Id.* at 6.) On February 27, 2008, Plaintiff filed this Complaint in the Eastern District of Virginia, alleging that the FTC had failed to timely respond to the FOIA request and seeking injunctive relief. (Compl. 2–3.) After conducting a search, "[o]n March 26, 2008, the Commission sent Plaintiff all documents that had been identified as nonexempt, or the segregable portions thereof, which were responsive to its FOIA request, along with a letter explaining the results of the search, (Mem. Supp. Def. Renewed Mot. Summ. J. 5–6.) On April 30, 2008 the FTC filed its first Motion for Summary Judgment. Plaintiff appended to its Opposition a declaration alleging that responsive documents existed in the FTC Northwest Regional Office that were not produced. (Opp. Mot. Summ. J. Ex. A ¶ 11.)

After reviewing the Hayes Declaration, Ms. Fina contacted the Northwest Regional Office in Seattle to determine whether any documents responsive to Plaintiff's FOIA request may have been overlooked in the search. On June 4, 2008, she learned that numerous potentially responsive documents existed that had not previously been produced to Plaintiff.... On June 26, July 11 and July 14, the Commission produced to Plaintiff the responsive, non-exempt records, or portions of records, relating to the Northwest Regional Office's investigation.

(*Id.* at 7–8.) On July 24, 2008, the FTC filed a Renewed Motion for Summary Judgment claiming that it had: conducted an adequate search for responsive documents, properly applied the FOIA exemptions[1], and released all reasonably segregable portions of exempt documents. Plaintiff's Opposition contests the adequacy of the search, the propriety of the claimed exemptions and the segregability analysis.

## II. DISCUSSION

### A. Standard of Review

■ Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c.) In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986.) Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986.) "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. A "material fact" is a fact that might affect the

1. Documents were withheld under Exemptions 3, 5 and 7(A.)

outcome of a party's case. *Id.* at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir.2001.) Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986.)

> In a FOIA action, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced, [is identifiable], or is exempt from the Acts inspection requirements." However, the agency must conduct a reasonable search for responsive records and must establish that it has "made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested." "An agency may prove the reasonableness of its search through affidavits of responsible agency officials as long as the affidavits are relatively detailed, nonconclusory and submitted in good faith."

*McCoy v. United States,* No. 1:04cv101, 2006 WL 463106 at *5 (N.D.W.Va. Feb. 24, 2006)(internal citations omitted.)

> In opposing a motion for summary judgment, a party must offer more than conclusory statements.... Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld;

(2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents.

*Carter, Fullerton & Hayes,* 520 F.Supp.2d at 139 (internal citations omitted.)

## B. Analysis

### 1. Adequacy of the Search

■ The Court finds that the FTC has conducted an adequate search because a review of the index and affidavit submitted demonstrate that the search was formulated and conducted in a manner so as to produce the responsive documents.

> In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, ... but whether the agency has "demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" In demonstrating the adequacy of its search, however, an agency may not rest on an affidavit that simply avers that the search was conducted in a manner "consistent with customary practice and established procedure." Rather, the affidavit must be reasonably detailed, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" so as to give the requesting party an opportunity to challenge the adequacy of the search.

*Ethyl Corp. v. U.S. E.P.A.,* 25 F.3d 1241, 1246–47 (4th Cir.1994)(internal citations omitted.)

#### a. Failure to search all agencies requested

■ The Court holds that the FTC's election not to search all agencies listed in

Plaintiff's FOIA request does not impugn the adequacy of the search because such a search may be reasonably limited. "An adequate search may be limited to the places most likely to contain responsive documents." *Defenders of Wildlife v. U.S. Dept. of Interior,* 314 F.Supp.2d 1, 10 (D.C.Cir.2004.) Plaintiff fails to cite to any authority that would require an agency to undertake the cumbersome task of searching all locations listed/requested in a FOIA request. Instead, Plaintiff merely posits that the search was inadequate because the agency did not search all of the locations listed. This Court adopts the established precedent of other circuits that an agency is entitled to limit its search based on an appropriate internal analysis of the locations where responsive documents are most likely to be located. *Id.* This approach is both practical and acknowledges the agency's familiarity with its own documents and filing procedures. The FTC has submitted the affidavit of Ms. Joan Fina, administrator of the FTC's FOIA compliance unit, detailing the FTC's procedures for identifying potential sources of responsive documents as well as how, based on her "experience with the Commission, knowledge of the function and responsibilities of the various organizations within the Commission, and the subject matter of the request," she determined the locations most likely to possess responsive documents. (Mem. Supp. Def. Renewed Mot. Summ. J. Ex. A.) This affidavit also contains discussion of the lengthy process the FTC's compliance unit undertook to conduct its search for responsive documents. (*Id.*) Therefore, the Court holds that the failure to search all requested locations does not impugn the adequacy of the search because the limitations of the search were reasonable and appropriate and the agency is entitled to limit its search in this manner.

### b. Failure to include "liquor" as a search term

■ The Court holds that the FTC's failure to add "liquor" as a search term to a FOIA request regarding alcohol does not merit a finding that the FTC's search was inadequate because such additional efforts are not required of agencies. "The [agency's] duty, however, is only to 'conduct a search reasonably calculated to uncover all relevant documents.' The agency is not required to speculate about potential leads. More specifically, the [agency] is not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C.Cir.1996)(internal citation omitted); *see also Rein v. U.S. Patent & Trademark Office,* 553 F.3d 353, 365 (4th Cir.2009)(finding an agency search to be properly limited to the four corners of the FOIA request, and stating that if a requestor discovers leads based on documents produced in response to a FOIA request, it is appropriate for them to submit a second FOIA request for additional documents.) Furthermore, an agency is "not required to reorganize its filing system in response to each FOIA request." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 370 (D.C.Cir.1978.) In explaining its failure to locate the responsive documents located in the Northwest Regional Office, the FTC explained that

> [T]he Northwest Regional Office's investigation was recorded in the MMS Database under the matter name "Liquor Control Board." Although Plaintiff's FOIA request repeatedly requested any documents related to the regulation of "alcohol," "wine," "spirits," and "malt beverages," and also asked that the Commission search for numerous alcohol-related entities by their proper names, Plaintiff did not specifically ask

the Commission to search for all documents containing the term "liquor." (Mem. Supp. Def. Renewed Mot. Summ. J. 14.) Plaintiff's argument that this shortcoming evidences an inadequate search is two-fold. First, Plaintiff expresses an incredulity that the FTC failed to include "liquor" as a search term, based on the duration and nature of the litigation between the parties. (Opp. Mot. Summ. J. 11.) However, despite Plaintiff's outrage, it fails to point to any authority that would support the Court siding with Plaintiff and finding that a failure to include "liquor" as a search term is indicative of the inadequacy of the search. It would be a stretch for the Court to issue a finding that the agency's procedures were flawed purely because they did not produce the Plaintiff's desired results. In light of the lack of any authority requiring the FTC to include the additional search terms and the existence of case law stating the exact opposite, the Court holds that the FTC's failure to add "liquor" did not render the search inadequate because the agency is not required to add search term regardless of their seemingly logical relationship to the subject matter of the request.

### c. Subsequent discovery of Seattle documents

■ The Court declines to declare the FTC's search inadequate based on the delayed production of documents from the Northwest Regional office because the discovery of additional documents after initial disclosures does not necessarily render the original search inadequate and Plaintiff has not shown bad faith. The mere discovery of additional responsive documents after the initial production of documents does not in and of itself render the search methods employed by the agency inadequate, nor does it evidence bad faith on the part of the agency. *Public Citizen v. Dep't of State*, 276 F.3d 634, 639 (D.C.Cir.

2002); *Goland*, 607 F.2d at 369–70 (D.C.Cir.1978.)

In *Goland*, the plaintiffs argued that the subsequent discovery of additional documents undermined the veracity of the affidavits relied upon by the court in making a determination as to the adequacy of the search. *Goland*, 607 F.2d at 370. In declining to vacate a prior affirmance of the district court's holding that the search was adequate the court of appeals stated that the "affidavits never stated that no further documents existed; they merely described the scope of the searches that had been undertaken" and that "an agency is required only to make reasonable efforts to find responsive materials". *Id.* Similarly, the Fourth Circuit in *Rein*, held that the agency's subsequent disclosures were demonstrative of good faith especially where when "an oversight occurred, the [agency] explained the reason for the mistake and took appropriate steps to correct it so that all individuals known or believed to possess the responsive materials performed the search", an occurrence very similar to what has taken place here. *Rein*, 553 F.3d at 364. Ultimately, this Court is in agreement with the principle set forth by the D.C. Circuit in *Public Citizen* when it decried the potential chilling effect of penalizing agencies for voluntarily making subsequent disclosures. *Public Citizen*, 276 F.3d at 645 ("[T]o effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure.") The second prong of Plaintiff's attack on the adequacy of the search in connection with the belated discovery of the Seattle documents, is that multiple FTC officials were copied on e-mail correspondence with the Seattle FTC office, demonstrating a familiarity with the activities in that office. CFH argues that this makes it therefore incredible that these officials did not inform the FTC FOIA compliance attorneys that re-

sponsive documents could potentially be located in the Northwest Regional office. (Opp. Mot. Summ. J. at 12.) Plaintiff has failed to provide the Court with any nexus between the FTC officials with this supposed knowledge and their participation in responding to this FOIA request. There is no indication that the FTC officials had cause to notify FOIA compliance attorneys of the existence of these documents and that a failure to do so constitutes an inadequacy in the FTC's FOIA response procedures. Furthermore, Plaintiff has not indicated why, if they were aware of this investigation in Seattle, they did not specifically request related documents in their FOIA request. The Court is persuaded by the FTC's response that "[t]o expect the directors of an office to personally ensure that each person mentioned in each document they produce in response to each and every FOIA request has also been contacted by the FOIA office is clearly unreasonable, particularly when the FTC received on average, 1055 FOIA requests per year." (Reply 7.) The Court holds that the FTC's search is not inadequate owing to a failure to include "liquor" as a search term or a failure of officials with knowledge of the Northwest Regional Office activities to inform the FOIA officials of responsive documents because the FTC does not have an obligation to add additional search terms to those listed in the FOIA request, nor has Plaintiff adduced sufficient facts to support a conclusion by the Court that any failure to initially locate the responsive documents in the Northwest Regional Office was a result of bad faith by the FTC.

### d. Shortcomings of affidavit

The Court holds that the absence of statistics regarding the documents produced in the FTC affidavit does not undermine the adequacy of the search or prohibit the Court from evaluating the adequacy of the search, because the affidavit contains the elements and details required in

the Fourth Circuit, which does not include the statistics sought by Plaintiff.

> In demonstrating the adequacy of its search ... the affidavit must be reasonably detailed, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" so as to give the requesting party an opportunity to challenge the adequacy of the search.

*Ethyl Corp.*, 25 F.3d at 1246–47 (4th Cir. 1994.) Plaintiff claims that neither it nor the Court are able to "establish that all the responsive documents have been provided to the defendant or that there has been a properly claimed exemption included on the *Vaughn* Index" because

> The affidavit does not contain the most basic information regarding the FTC's response such as: 1) The actual number of responsive documents identified, 2) The number of documents released to the plaintiff, 3) The number of documents which were withheld in part or in whole, and 4) What, if any, documents are responsive to, or withheld from, the six items listed in the FOIA request.

(Opp. Mot. Summ. J. 13.) However, Plaintiff has failed to identify any authority indicating that such representations are necessary to enable the Court to review the adequacy of the search or the propriety of the claimed exemptions. Having found no authority to support such a requirement or finding of deficiency, the Court holds that a failure to include the "basic information" indicated by Plaintiff does not render the FTC affidavit or *Vaughn* index deficient.

■ 2. *Exemptions*—"The agency bears the burden of demonstrating that requested information comes within an FOIA exemption." *Spannaus v. U.S. Dep't of Justice*, 813 F.2d 1285, 1288 (4th Cir.1987)(citing *FBI v. Abramson*, 456

U.S. 615, 622, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982).)

> If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Id.* at 1289.

#### a. *Exemption 3:*

The Court declines to address the validity of the documents withheld under Exemption 3 because Plaintiff has only challenged one such document and the FTC has represented to the Court that this document was withheld in error and has been released to Plaintiffs, making the issue before the Court moot. Despite lengthy discussion of Second Circuit precedent and the Twenty-first Amendment, Plaintiff has only specifically pointed to the documents in Folder 17 as being withheld improperly. According to Ms. Fina's affidavit:

> The FTC also initially claimed an Exemption (b)(3) for an additional 277 pages of documents in its first *Vaughn* Index. Attachment 3A, Folder 17 pp. 1–277. However, in the process of reviewing the newly-discovered documents related to the Northwest Regional Office's investigation, it was determined that these 277 pages of documents—which related to that investigation—were not submitted voluntarily in lieu of compulsory process or pursuant to compulsory process. The FTC thus released these documents to Plaintiff.

(Second Mot. Summ. J. Ex. A ¶ 41.) Plaintiff, in challenging the validity of the claimed exemption, has the responsibility of designating certain documents as improperly withheld. It would be both im-

proper and impractical for the Court to engage in a guessing game or furthermore a wholesale evaluation of each and every instance where the exemption was claimed to determine whether the FTC has carried their burden. Plaintiff has indicated one such allegedly improperly exempted set of documents, which has by the FTC's representations been released. The Court therefore declines to address Plaintiff's allegations regarding Exemption 3 and finds the issue to be moot.

#### b. *Exemption 5: Inter-agency memorandums or letters*

■ The Court holds that the FTC's withholding of certain documents pursuant to Exemption 5 is not undermined by a failure to identify FTC policies that the records relate to, or to include the proper names of the authors and recipients of the withheld documents in the *Vaughn* Index because such identification is unnecessary. Exemption 5 restricts disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (2006). One sub-category of documents protected from disclosure by Exemption 5 are those that qualify for the deliberative process privilege. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87–89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). "This privilege is designed to protect the quality of administrative decision-making by ensuring that it is not done 'in a fishbowl.'" *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir.1993.)

> To invoke the privilege successfully, the government must show that, in the context in which the materials are used, the documents are both predecisional and deliberative. Predecisional documents are prepared in order to assist an agen-

cy decision maker in arriving at his decision.

... Deliberative material reflects that give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes. Thus, the deliberative process exemption protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.

*Id.* at 1253 (internal citations omitted.)

Plaintiff argues that the "FTC's *Vaughn* Index is wholly inadequate to allow the Court to perform a *de novo* review of the exemptions." (Opp. 19.) Plaintiff attributes this inadequacy to the FTC's failure to identify "a FTC policy that all of these draft or internal documents are purportedly antecedent to and therefore exempt from disclosure," (*Id.* at 18.) In addition to failing to identify a source of authority for its position, Plaintiff blatantly ignores the established precedent in the Fourth Circuit that when an agency identifies documents as withheld under Exemption 5 it

> [N]eed not identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process ... the line between predecisional documents and post-decisional documents may not always be a bright one.

*City of Va. Beach,* 995 F.2d at 1253 (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151–52 n. 18–19, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).) The only argument that Plaintiff has presented to the Court as a basis for finding the claimed exemption inadequate is directly contradicted by Fourth Circuit precedent.

▮ Plaintiff also objects to the FTC's failure to identify the authors and recipients of certain documents by proper name in the *Vaughn* Index when claiming Exemption 5 protection. The Court acknowledges that a properly drafted *Vaughn* Index identifies the authors and recipients in order to enable the Court to consider those persons' relationships to the decision-making process. *Ethyl Corp.,* 25 F.3d at 1250.[2] The Court finds no basis for a requirement that authors and recipients must be identified by proper name. The *Vaughn* Index and affidavits, submitted by officers of the court under oath, indicate in some instances the proper names and in others merely the titles of the authors and recipients. Plaintiff has failed to produce anything to support a finding of bad faith by the FTC or contrary affidavits or other evidence that would justify this Court calling into question the veracity of the representations made by the FTC. Instead, Plaintiff asks the Court to reject the representations based on allegations that fail to rise above mere speculation, that there is some discrepancy or error in the claimed exemptions. This is not enough on summary judgment to create a material issue of fact or to support a finding by the Court that the FTC has improperly claimed this exemption.

Having reviewed the *Vaughn* Index and the affidavits submitted by the FTC, and considered the unsupported (both legally and factually) allegations presented by Plaintiff, the Court holds that Plaintiffs have failed to present the Court with a

**2.** The Fourth Circuit in *Rein* recently noted that *"Ethyl Corporation* left open, as do we, the possibility that the district court may be able to determine whether the deliberative process privilege applies without knowing the author and recipient." *Rein,* 553 F.3d at 367.

genuine issue of material fact with respect to the documents withheld pursuant to Exemption 5 and that failure plus the FTC's sufficient showing of the propriety of the withholding warrants granting summary judgment as to these documents.

c. *Exemption 7(A): Law Enforcement Purposes*

The Court grants summary judgment with respect to the documents withheld under Exemption 7(A) because the information was obtained for the law enforcement purpose of investigating a potential anti-competitive behavior that the agency is charged with regulating and enforcing, and because the FTC has set forth sufficient reasons why the disclosure could reasonably be expected to interfere with enforcement proceedings. Law enforcement investigation documents are exempt from disclosure in response to a FOIA request. The statute provides for the exemption of: "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A) (2006).

 The Court finds that the FTC has demonstrated that the records at issue were compiled for a law enforcement purpose because there was an apparent relationship to the FTC's legitimate and authorized investigation of potentially anti-competitive liquor regulations. "In order for the records to have been ... compiled [for law enforcement purposes], the investigative activities giving rise to the compilation of the records must be related to the enforcement of federal law, and there must be a rational connection between the investigative activities and the agency's law enforcement duties." *Wichlacz v. U.S. Dep't of Justice,* 938 F.Supp. 325, 330 (E.D.Va. 1996.) Ms. Fina declared in her affidavit that "the FTC asserted Exemption (b)(7)(A) in connection with documents related to the FTC's investigation into the potential anti-competitive effects of state liquor control board regulations, through which the Commission has examined the activities of a number of state liquor control board." (Mem. Supp. Def. Renewed Mot. Summ. J. Ex. A Fina Aff. ¶ 58.)[3] The Federal Trade Commission Act authorized the FTC to prevent the use of "unfair methods of competition ... in or affecting commerce." 15 U.S.C. § 45 (2006). In light of this and the FTC's authority to enforce other antitrust and consumer protection laws, the Court holds that the FTC has produced sufficient evidence to conclude that the records were compiled in relation to the enforcement of federal law, and there is a rational connection between the investigative activities and the FTC's law enforcement duties.

Plaintiff contends that the FTC has not and cannot satisfy the first prong of this analysis because "Courts have uniformly required that the investigations must be

---

**3.** More specifically, the FTC has indicated that the documents withheld under Exemption 7(A) included:

a) submissions by states in response to access letters from the Commission and compilations of data from those submissions; b) access letters sent by the Commission to state liquor control boards and drafts of such letters; c) correspondence (by letter or e-mail) between state officials and FTC employees concerning Commission access letters and materials submitted in response;

d) memoranda and draft memoranda, notes and internal e-mails discussing targets, results and/or legal or economic theories of investigation; e) internal reports discussing pending cases and accessing investigational events and future actions; f) draft charts prepared to help identify potential target states by type of regulation; and g) interview reports summarizing witness statements.

(Def. Renewed Mot. Summ. J. Ex. A Fina Aff. ¶ 60.)

'within the agency's law enforcement authority.'" (Opp. 23)(citing *Taylor v. U.S. Dep't of Justice*, 257 F.Supp.2d 101, 108 (D.D.C.2003).) It goes on to argue that "[b]ecause the FTC lacks the authority to investigate the States' exercise of their Twenty-first Amendment powers, the FTC may not withhold any information pursuant to exemption 7(A)." (*Id.* at 24.) Plaintiff concludes by stating that "[b]ecause the FTC has no legitimate investigatory powers in this arena, the defendant has no legitimate Exemption 7(A) claims to assert." (*Id.* at 25.)

Plaintiff's position is flawed for several reasons. First, it has overstated and misrepresented the body of authority that requires an agency to make a showing as to FTC law enforcement authority. The test cited by Plaintiff can be found in a District of Columbia District Court case stating that

> This "law enforcement purposes" threshold issue is further divided into a two-part test designed to determine whether the agency could properly prepare law enforcement records. An agency may only invoke Exemption 7 if: (1) the records were created as part of an investigation related to the enforcement of federal laws and (2) that investigation was within the agency's law enforcement authority.

*Whittle v. Moschella*, 756 F.Supp. 589, 593 (D.D.C.1991)(citing *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C.Cir.1982).) *Whittle* is an extension of the seminal case on this issue in the D.C. Circuit where the court held that

> First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security. To satisfy this requirement of a "nexus", the agency should be able to identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law.... Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least "a colorable claim" of its rationality.... In order to pass the FOIA Exemption 7 threshold, such an agency must establish that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached.

*Pratt*, 673 F.2d at 421. Setting aside the possibility that *Whittle* may have extended the holding in *Pratt* beyond its intent or logical conclusion[4], even if the holding in *Pratt* is to be interpreted as the court in *Whittle* and Plaintiff in this case would have it, this Court declines to adopt such a rule that would require this Court to engage in a detailed consideration of the extent and scope of a federal agency's law enforcement authority for several reasons. First, Plaintiff has overstated the support for such a rule when it states that "[c]ourts have *uniformly* required that the investigations must be 'within the agency's law enforcement authority." (Opp. 23.) This representation ignores the well-documented circuit split on this exact issue.

In some circuits, that threshold requirement is met automatically when a law

---

**4.** What makes this extrapolation that the court is required to conduct a detailed examination of an agency's authority puzzling is the clear statement by the court in *Pratt* that "courts can usually assume that government agencies act within the scope of their legislated authority. This assumption is not the product of wishful thinking, but instead results from our observations over time that, despite occasional and regrettable lapses, governmental agencies typically go about their intended business." *Pratt*, 673 F.2d at 418.

742

enforcement agency claims exemption of investigatory files. *Kuehnert v. FBI* 620 F.2d 662 (8th Cir.1980); *Irons v. Bell,* 596 F.2d 468 (1st Cir.1979.) The D.C. Circuit has rejected that per se approach to the threshold criterion. It will consider allegations of lack of nexus between an investigation and a legitimate law enforcement purpose, but the proponent of disclosure has a heavy burden to prove lack of nexus. *Keys v. Department of Justice,* 830 F.2d 337 (D.C.Cir. 1987.)

Richard J. Pierce, Jr., Administrative Law Treatise 286–87 (4th ed. 2002); *see also Arenberg v. DEA,* 849 F.2d 579, 580 (11th Cir.1988)(noting the circuit split and citing to *Kuehnert, Pratt,* and *Williams v. F.B.I.,* 730 F.2d 882, 886 (2d Cir.1984).) [5] The Fourth Circuit has yet to be presented with a case where the "law enforcement purpose" element has been contested, requiring the court to either adopt a test from another circuit or set forth it's own pronouncement of what is required.[6] This Court is therefore uninclined to adopt the rule advocated by Plaintiff requiring it to make a determination as to the agency's investigative authority not only because

such a rule has not been pronounced by the Fourth Circuit but also because this Court is reluctant to create a rule that would allow for such challenges to agency authority within the confines of a FOIA action wherein there are other, more appropriate mechanisms for such a challenge to be presented to the Court for adjudication.

However, even if the Fourth Circuit were to adopt the line of cases from the D.C. Circuit, this Court still holds that the FTC's investigation identified here was within its authority. To find support for this conclusion the Court need merely turn to the Supreme Court's opinion in *California Retail Liquor Dealers Association v. Midcal Aluminum,* a case cited by both parties. 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980.) Plaintiff selectively cites to the portion of the opinion where the Court states that "[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Id.* at 110, 100 S.Ct. 937. Plaintiff neglects to consider the sentences of the opinion that immediately follow the aforemen-

**5.** Notably all of these cases involve documents requested from the FBI. What is noteworthy about this is the distinction that *Pratt* makes between pure law enforcement agencies such as the FBI, and other "mixed-function agencies". The court in *Pratt* stated that courts should give a great deal of deference to agencies whose principal and/or exclusive responsibility is criminal law enforcement concluding that

[A] court can accept less exacting proof from such an agency that the purpose underlying disputed documents is law enforcement. This less exacting judicial scrutiny of a criminal law enforcement agency's purpose in the context of the FOIA Exemption 7 threshold is further bolstered by Congress' concern that inadvertent disclosure of criminal investigation, information sources, or enforcement techniques might

cause serious harm to the legitimate interest of law enforcement agencies.
*Pratt,* 673 F.2d at 418. This may be contrasted with the court's statement that the purposes claimed by mixed-function agencies must be "scrutinize[d] with some skepticism." *Id.*

**6.** The Fourth circuit has never cited *Keys* and has only cited *Pratt* twice in dicta. *Aquino v. Stone,* 957 F.2d 139, 143 (4th Cir.1992)(considering a Privacy Act claim the defendant agency objected to the amendment of certain records claiming an exemption for investigatory records); *George v. Reese,* No. 91–7156, 1992 WL 262, *1 (4th Cir. Jan. 2, 1992)(citing *Pratt* in support of the conclusion that "[a]ll requested documents are not subject to a blanket exception from disclosure merely ... because the documents are from [petitioner's] FBI file.")

tioned pronouncement where the Court goes on to state that "[a]lthough States retain substantial discretion to establish other liquor regulations, those controls may be subject to the federal commerce power in appropriate situations. The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.'" *Id.* If this were not enough, the Court states earlier in the opinion that "decisions have given 'wide latitude' to state liquor regulation ... but they also have stressed that *important federal interests in liquor matters survived the ratification of the Twenty-first Amendment.*" *Id.* at 108, 100 S.Ct. 937 (emphasis added.) Plaintiff's sole argument as to why the FTC cannot satisfy the first prong required to claim Exemption 7(A) is that the Twenty-first Amendment has stripped the federal agency of any authority to investigate. In light of the Supreme Court's express pronouncement to the contrary, this Court finds that not only does the FTC have legitimate authority to investigate the potential anticompetitive effects of state liquor control board regulations, but that Plaintiff has also failed to carry its burden to overcome this showing. *See Keys v. U.S. Dep't of Justice,* 830 F.2d 337, 341 (D.C.Cir.1987) ("An objective finding of such a nexus is refutable only by 'persuasive evidence that in fact another, nonqualifying reason prompted the investigation.'") (citing *Shaw v. FBI,* 749 F.2d 58, 63 (D.C.Cir. 1984).)

 The Court also holds that the FTC has satisfactorily demonstrated that the documents sought for disclosure here could be reasonably expected to interfere with law enforcement proceedings. To satisfy this second prong, "the government must demonstrate that: (1) law enforcement proceedings are pending or prospective; and (2) release of the information could reasonably be expected to cause some articulable harm." *Wichlacz,* 938

F.Supp. at 330 (citing *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Manna v. U.S. Dep't of Justice,* 51 F.3d 1158, 1164 (3d Cir.1995).) When Congress amended the language contained in the exception in 1986, it changed "would interfere with" to "could reasonably be expected to interfere with," effectively relaxing the standard. *Id.* at 331. Therefore, "[t]he agency's showing under the amended statute ... is to be measured by a standard of reasonableness, which takes into account the 'lack of certainty in attempting to predict harm' while providing an objective test." *Spannaus,* 813 F.2d at 1288 (citing S.Rep. No. 98–221 (1983).)

Ms. Fina's affidavit lists several ways in which the FTC believes that the production of the documents at issue could potentially interfere with law enforcement proceedings.

> The identities of the specific states that the Commission is investigating are not public, with one exception. Disclosure of the identities of the states at issue, to the extent they are not public, and of the information the Commission has compiled regarding the effect of these states' regulations, would interfere with the Commission's ability to investigate the regulations' effect on competition. If the states' identities, or the information they submitted, were made public, entities that are subject to these states' regulations could alter their behavior in ways that would obscure the regulations' potential anti-competitive effects. Disclosure of the identities of other states that the Commission has identified as potential targets of its investigation going forward would likewise interfere with the Commission's ability to investigate the competitive effect of the regulations of those states.

In addition to those concerns, the release of many of the records would also interfere with law enforcement proceedings by (1) creating a chilling effect on potential state sources of information; (2) making more difficult the future investigation of potential anti-competitive conduct by making states less willing to provide information voluntarily; (3) revealing investigational methods and theories; (4) hampering the free flow of ideas between Commission employees and supervisors; and/or (5) hindering the Commission's ability to shape and control investigations.

(Def. Renewed Mot. Summ. J. Ex. A. Fina Aff. ¶ 58–59.) Plaintiff finds fault with the FTC's explanation on the grounds that it fails to sufficiently adduce specific harm.[7] However, as previously stated, that is not the standard in the Fourth Circuit. On multiple occasions, the Fourth Circuit has found justifications such as those adduced by the FTC to satisfy the requirements of the second prong. *J.P. Stevens & Co. v. Perry,* 710 F.2d 136, 143 (4th Cir.1983)("Premature disclosure of these documents would (1) create a 'chilling effect' on potential witnesses and dry up sources of information . . .; (2) hamper the free flow of ideas between Commission employees and supervisors or with other governmental agencies; (3) hinder its ability to shape and control investigations; and (4) make more difficult the future investigation of charges and enforcement thereof."); *Willard v. I.R.S.,* 776 F.2d 100, 103 (4th Cir.1985)(upholding non-disclosure under Exemption 7 on the grounds that disclosure could alter the course of an ongoing investigation); *Spannaus,* 813 F.2d at 1289 (stating that the withholding of documents under Exemption 7 where disclosure could potentially lead to the de-

struction or alteration of evidence is warranted.) This Court holds that Ms. Fina's affidavit has adequately set forth a reasonable expectation of potential interference resulting from disclosure. Therefore, the Court holds that the records were properly withheld under Exemption 7(A) because they were compiled for law enforcement purposes and their disclosure could reasonably be expected to interfere with law enforcement proceedings and that the FTC is entitled to summary judgment.

### 2. Segregability

 The Court holds that the documents withheld under Exemptions 3, 5, and 7(A) were properly reviewed for segregable materials and that reasonably segregable information was released to the parties because a review of the index and affidavits supports the conclusion that the only qualifying information was withheld and all remaining information was segregated and produced for review. An agency presented with a FOIA request must provide the requester with "[a]ny reasonably segregable portion of a record" that does not fall within an exemption. 5 U.S.C. § 552(b) (2006). The burden is on the agency to show that no segregable materials exist. *Ethyl Corp.,* 25 F.3d at 1250.

Since any "reasonably segregable" nonexempt portions of a document must be disclosed, where objective facts and observations can be separated from the official's subjective analysis and interpretation of facts, disclosure of the purely factual portion of a record may be required. If the factual materials, however, are so inextricably intertwined with the policymaking aspects of a memorandum that their disclosure would compromise the confidentiality of deli-

---

**7.** Plaintiff also implores the Court to "balanc[e] the interests", without citing any authority for employing a balancing test when

considering Exemption 7(A)(Opp. Mot. Summ. J. 26.) The Court finds no authority for such an approach.

berative information that is entitled to protection, those factual materials fall within the exemption. In determining severability, more is required than merely plucking factual segments from deliberative documents; the relation of the factual segments to the document as a whole must be considered.

37A Am.Jur. 2d *Freedom of Information Acts* § 197 (2008.) The Court may examine the reasons proffered by the agency in its *Vaughn* index as well as any affidavits submitted.

The FTC has addressed its efforts to segregate the material that it has claimed as exempt in both Ms. Fina's affidavit as well as the *Vaughn* index. Ms. Fina states in her affidavit that with respect to Exemption 3, "[t]he FTC did not segregate any material in documents withheld pursuant to Exemption 3 ... because all such material falls within the scope of Section 21(f) of the FTC Act of 7A(h) of the Clayton Act, regardless of whether it is factual." (Mem. Supp. Def. Renewed Mot. Summ. J. Ex. A Fina Aff. ¶ 66.) The FTC argues in its Motion for Summary Judgment that because of Congress' intent that Exemption 3 sweep broadly, the FTC is not required to segregate the documents withheld under Exemption 3. (*Id.*) Furthermore, with respect to the documents withheld under Exemption 5, Ms. Fina states three reasons in her affidavits why certain materials were not segregable: 1) the author of the document presented factual information in a manner that suggested his/her subject assessment of the information; 2) the documents contained factual information that was dis-

tilled from a larger body of information, the disclosure of which would reveal the agency's deliberative process in evaluating information; or 3) the release of information in a draft would reveal how the agency developed the final document. (*Id.* Ex. A Fina Aff. ¶ 64.)[8] Finally, regarding Exemption 7(A), the FTC claims to have "withheld only information that would identify the states at issue, alert potential targets of investigation, create a chilling effect on potential witnesses and sources of information, make more difficult the future investigation of potential anti-competitive conduct, reveal investigational methods and theories, hamper the free flow of ideas between Commission employees and supervisors, or hinder the Commission's ability to shape and control investigations." (*Id.* Ex. A Fina Aff. ¶ 67.)

The Court finds that Ms. Fina's affidavit shows that the FTC has properly segregated the withheld documents because: 1) the documents submitted by Plaintiff constitute an example of the FTC going through documents line-by-line and assessing segregability; 2) the FTC has adduced sufficient and uncontradicted explanations of its segregation procedures and rationale both through affidavits and the *Vaughn* index; and 3) Plaintiff has failed to show that a genuine issue of fact exists as to the FTC's assertions regarding segregability.

At oral argument Plaintiff went to great lengths to encourage the Court to conduct an *in camera* review of the documents produced in response to the FOIA request to determine whether the exemptions were properly declared and

---

**8.** The FTC goes to pains to indicate in its Motion for Summary Judgment that "[i]n identifying the specific reason why the FTC could not reasonably segregate the factual material in some of its Exemption 5 documents, the FTC's *Vaughn* Indexes in this case provide far more detail about the Commission's segregability analysis than the *Vaughn* Index that caused Judge Lamberth concern in the D.C. case, where the court criticized the FTC for simply repeating the 'generic declaration' that information was 'inextricably intertwined with the basis for withholding' without providing any additional explanation of why this is so." (Mem. Supp. Renewed Mot. Summ. J. 29.)

that the documents were appropriately segregated. The Court declines to conduct such a review finding it to be an inefficient use of judicial resources in light of the thorough and detailed *Vaughn* index and affidavit produced by the government and Plaintiff's inability to demonstrate bad faith on the part of the government. "Review of the agency's decision to withhold a document does not automatically require an *in camera* inspection." *Ethyl Corp.,* 25 F.3d at 1249. An *in camera* inspection may be ordered after an agency has failed to carry its burden through the use of testimony, affidavits and indexes. *Id.* The Fourth Circuit has recognized that *in camera* review "can be cumbersome and overburdening for the judiciary." *Id.* at 1250. Furthermore, "there are times when the benefits of having the *in camera* inspection are overwhelmed by the inordinate amount of time which it would consume." 1 FED. INFO. DISCL. § 8:15. Therefore, "a court should not resort to [*in camera* inspection] routinely on the theory that 'it can't hurt.'" 1 FED. INFO. DISCL. § 8:13. Thus, *in camera* review is neither required nor appropriate, "[i]f the Government fairly described the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position." *Young v. Central Intelligence Agency,* 972 F.2d 536, 539 (4th Cir.1992.) As previously stated, the Court finds the *Vaughn* index and affidavit submitted to be thoroughly detailed and sufficient to provide a basis for this Court to assess whether the FTC appropriately withheld documents requested by Plaintiff under FOIA. Plaintiff has failed to present sufficient evidence of bad faith to undermine the credibility accorded to these submissions. Additionally, the Court finds it would be inefficient and imprudent to conduct an *in camera* review as a purely precautionary measure in the face of the evidence presented by the parties. For these reasons, the Court hereby denies Plaintiff's request to conduct an *in camera* review of the documents produced and/or withheld by the FTC.

### III. CONCLUSION

The Court grants summary judgment in favor of Defendant FTC, because it has demonstrated through its *Vaughn* index and Ms. Fina's affidavit that it has conducted a search in response to Plaintiff's FOIA request that was reasonably calculated to produce responsive documents, and that the FTC properly withheld documents under the claimed exemptions, and that it released any reasonably segregable portions of the withheld documents.

For the foregoing reasons, it is hereby

ORDERED that Defendant FTC's Motion for Summary Judgment is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.